DAVID SEROR - Bar No. 67488
JESSICA S. WELLINGTON - Bar No. 324477
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:      dseror@bg.law
            jwellington@bg.law

Attorneys for Plaintiffs Carole Sawusch,
Administrator of the Estate of Mark
Sawusch, and Patsy Ann Sawusch,
Beneficiary of the Estate of Mark Sawusch

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 21-11450 |
| ANTHONY DAVID FLORES, | Chapter 7 |
| Debtors. | Adv. No. 21-_____ |
| | **COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT** [11 U.S.C. §§ 523(a)(2), (a)(4) & 523(a)(6)] |
| CAROLE SAWUSCH, Administrator of the Estate of Mark Sawusch, and PATSY ANN SAWUSCH, Beneficiary of the Estate of Mark Sawusch, | |
| Plaintiffs, | |
| v. | |
| ANTHONY DAVID FLORES, an individual, | |
| Defendant. | |

1

2687012

**TO DEFENDANT ANTHONY DAVID FLORES:**

Carole Sawusch, Administrator of the Estate of Mark Sawusch, and Patsy Ann Sawusch, Beneficiary of the Estate of Mark Sawusch (together, "Plaintiffs"), creditors and plaintiffs herein, complain of the debtor and defendant Anthony David Flores ("Debtor" or "Defendant"), and allege as follows:

**STATEMENT OF JURISDICTION, VENUE AND PROCEEDINGS**

1.      On June 2, 2021, Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of California, Fresno Division, commencing the above-captioned bankruptcy case.

2.      As of the date of this complaint, the Debtor has not been granted a discharge.

3.      This Complaint is timely because the date by which a Complaint to determine dischargeability of a debt expires on August 27, 2021.

4.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a), as this is a core proceeding under 28 U.S.C. § 157(a) and § 157(b)(2)(I).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a), in that the instant proceeding is related to a case under Title 11 of the United States Code which is still pending.  This action is commenced pursuant to Bankruptcy Code §§ 523(a)(2)(A), (a)(4) and 523(a)(6).

5.      This is an adversary proceeding in which the Plaintiffs-creditors are seeking a determination as to the dischargeability of the debt owed by Debtor to Plaintiffs under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4) and 523(a)(6).

6.      Plaintiffs consent to final judgment entered by this Court.

**THE PARTIES**

7.      Plaintiff Carole Sawusch ("C. Sawusch") is an individual and administrator of the Estate of Mark Sawusch.  C. Sawusch is the sister of Mark Sawusch, M.D. ("Dr. Sawusch").  C. Sawusch is a creditor of Debtor through a stipulated judgment entered in the Superior Court of California, County of Los Angeles, in case 18SMCV00134.

2

2687012

8.      Plaintiff Patsy Ann Sawusch ("P. Sawusch") is an individual and beneficiary of the Estate of Mark Sawusch. P. Sawusch is the mother of Dr. Sawusch. P. Sawusch is a creditor of Debtor through a stipulated judgment entered in the Superior Court of California, County of Los Angeles, in case 18SMCV00134.

9.      Upon information and belief, Defendant Anthony David Flores is an individual and resides at 1612 Fulton Ave., No. 103, Fresno, California.

10.     At all times herein mentioned, Debtor and Anna Rene Moore ("Moore") were the agents, servants and employees of each other, and together jointly met, conspired and agreed to do all the things hereinafter alleged. Pursuant to the meetings, conspiracies and agreements between them are each liable and responsible for the acts of the other.

### GENERAL ALLEGATIONS

**A. Debtor Moves into Dr. Sawusch's Malibu Beach House Under False Pretenses**

11.     Dr. Sawusch was a distinguished, board certified ophthalmologist from Florida. After Dr. Sawusch earned his medical degree from the University of Chicago Pritzker School of Medicine and completed his residency at Johns Hopkins University, he moved to California. Dr. Sawusch settled in Malibu, California, where he bought a beachfront home (the "Malibu Beach House"). Dr. Sawusch ran a successful ophthalmology practice in Pacific Palisades.

12.     In or around November 2016, Dr. Sawusch sustained severe burns to his hands, which rendered him unable to continue with his medical practice.

13.      Sadly, Dr. Sawusch also suffered from severe bipolar disorder, which worsened because of his physical disability. Dr. Sawusch's bipolar disorder caused him significant cognitive impairment and extreme mood swings. Between 2015 and 2017, Dr. Sawusch was involuntarily hospitalized (often pursuant to California Welfare & Institutions Code § 5150) eight times. During his hospitalizations in May and June 2017, hospital staff described Dr. Sawusch as "extremely psychotic and manic," "agitated and combative," and suicidal with a "poor" capacity for attending to his activities of daily living.

2687012

14. As a result of his physical and psychological impairments as set forth herein, Dr. Sawusch was urged to and did repose trust and confidence in Debtor and was vulnerable and susceptible to the influence exerted over him by Debtor.

15. On or around June 23, 2017, less than a month after being discharged from Del Amo Psychiatric Hospital, Dr. Sawusch met Debtor and Moore. Upon information and belief, Debtor and Moore represented themselves to Dr. Sawusch as spiritual guides and health practitioners. In addition, upon information and belief, Debtor represented to Dr. Sawusch that he had decades of experience and training in managing investment portfolios and multi-million-dollar investment and brokerage accounts. In reality, Debtor and Moore operated a window cleaning service in Clovis, California.

16. After their first meeting, Debtor kept in contact with Dr. Sawusch sending him a text message on June 30, 2017 stating, "We are sending you all of our love and positive energy. . . . Our desire is to add ease and flow to your life and be of great service." Within a week of meeting Dr. Sawusch, Debtor and Moore moved into the Malibu Beach House, and began living with Dr. Sawusch.

17. Debtor and Moore moved in with Dr. Sawusch under the false pretense of being caretakers, who would provide him with health, spiritual, and other personal services. Upon information and belief, neither was licensed in nor did they have any formal training or experience as caretakers, in mental health treatment, physical therapy, medical training or spiritual guidance.

18. Although Debtor represented to Dr. Sawusch that he would provide him with health, spiritual, and other personal services, in text messages to his friends, Debtor made clear his plan with regard to Dr. Sawusch—to use Dr. Sawusch and his money for Defendant's own personal benefit.

19. On September 10, 2017, after Dr. Sawusch signed the first Power of Attorney, discussed below, Debtor texted his friend, Eric Shimp, "PS… I got power of attorney for the beach house." Mr. Shimp wrote back, "Boom." Two weeks later, Debtor texted Mr. Shimp that "[t]hings are going well with my friend/client Dr. Mark Sawusch. He continues to share more trust and confidence with me I feel like this could possibly be a long-term business relationship between us." A week later, on September 30, 2017, Debtor texted his friend, Jerry Barracuda, and said, "You will

4

2687012

be cutting Dr. Sawusch's hair, I am his Power of Attorney and Executive Life Assistant. My goal is to integrate him into Love and Light. He is a potential investor for all of my contacts. . . ."

**B. Debtor Fraudulently Obtains Powers of Attorneys From Dr. Sawusch**

20.     Shortly after meeting Debtor and Moore, Dr. Sawusch's bipolar disorder worsened, resulting in a series of arrests and hospitalizations. On July 30, 2017, Dr. Sawusch was arrested on felony and misdemeanor charges, and he remained in custody until Debtor used Dr. Sawusch's funds to bail Dr. Sawusch out of jail on September 17, 2017.

21.     After his arrest on July 30, 2017, Dr. Sawusch's mental condition worsened considerably. On August 18, 2017, jail staff admitted Dr. Sawusch to the forensic inpatient unit of the Twin Towers jail, noting that he was "unable to verbalize a plan of care for food, shelter, clothing." On August 25, 2017, a court-appointed psychiatrist, after conducting a California Penal Code Section 1368 evaluation, reported that Dr. Sawusch was not able to understand the nature and purpose of the criminal proceedings against him. On that same day, Dr. Sawusch's public defender wrote, "I could not have a rational conversation with the defendant about this case. He was a mental wreck."

22.     On September 9, 2017, Debtor procured a Power of Attorney (the "Sept. 9 POA") over Dr. Sawusch's real and personal property, banking and business operations and other transactions, as well as personal and family maintenance. On September 10, 2017, after obtaining the Sept. 9 POA, Debtor texted his friend Eric Shimp, "PS I got Power of Attorney for the beach house." Shimp texted in reply, "Boom."

23.     On September 10, 2017, Dr. Efi Rubinstein, a jail forensic evaluator, recommended that Dr. Sawusch receive "restoration to competency services. . ." at a state hospital "where he will be provided the necessary interventions, structure, and support to manage his risk of dangerousness while attempting to restore his competency."

24.     Two days later, on September 12, 2017, Debtor procured an additional Power of Attorney (the "Sept. 12 POA," and together with the Sept. 9 POA, the "POAs"), which expanded the powers previously granted to Debtor in the Sept. 9 POA. True and correct copies of the POAs are attached hereto as **Exhibit A** and incorporated herein by this reference. The Sept. 12 POA included

grants of power over Dr. Sawusch's stock and bond transactions, commodity and option transactions, personal and family maintenance, benefits from social security, Medicare, Medicaid, or other governmental programs and tax matters.

25.     Each of the POAs contained a provision signed by Debtor that states, in relevant part, "You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property."  Neither of the POAs contained a provision that authorized the Debtor to transfer Dr. Sawusch's property to himself.

26.     On September 17, 2017, Debtor used the POAs to access Dr. Sawusch's funds to bail him out of jail.  Debtor and Moore then quickly moved back into the Malibu Beach House with Dr. Sawusch and took over his affairs, while isolating Dr. Sawusch from the Plaintiffs and other family and friends.

27.     After bailing him out of jail, Debtor began representing that he was in complete control of Dr. Sawusch's personal and financial affairs, including but not limited to, in the following ways:

  a. November 2017: Debtor signed a consent form for Malibu chiropractor Dr. Ronald Magueri as "Guardian" of Dr. Sawusch.

  b. November 23, 2017: A woman named Andrea wanted to speak with Dr. Sawusch. Debtor refused to permit the contact and wrote her, "I have been asked to handle all relationships that come through the Beach house."

  c. November 29, 2017: Dr. Alejandro Beliz was tasked with evaluating Dr. Sawusch's suitability for a community placement pursuant to the California Penal Code Section 1368 proceedings.  His review of the case included this statement, "That being said, it has come to this evaluator's attention Mr. Sawusch's power of attorney (Flores) has been overly involved in directing Mr. Sawusch's treatment to date.  As a result, Gateways CONREP does have remaining concerns about our ability to effectively treat Mr. Sawusch in the community given his power of attorney's overreaching involvement in Mr. Sawusch's life."

2687012

d. December 26, 2017: P. Sawusch hired attorney Terry Wasserman to assist with a conservatorship of Dr. Sawusch. Mr. Wasserman spoke with Debtor, who stated he was "in complete control of Dr. Sawusch's personal and financial affairs. . . ."

e. January 20, 2018: Debtor signed a receipt of notice of privacy for neurologist Dr. Daniel Fran identifying himself as "guardian or conservator of an incompetent person."

f. February 5, 2018: Doug Ridley, Dr. Sawusch's criminal defense attorney, described Debtor as "[Dr. Sawusch's] mentor and manager."

g. March 28, 2018: Gary Wittenberg, a medical board attorney investigating Dr. Sawusch's criminal history, wrote a memo regarding a meeting with Dr. Sawusch and Debtor on March 27, 2018, stating, "[Debtor] and his partner, Moore live with client at his home, manage his activities and appointments and insure [Dr. Sawusch] takes his meds. 'Caretaker/Estate mgr' and says 'Client prefers/requests I communicate with [Debtor] directly and not with him. [Debtor] has durable power of atty.'"

28. Debtor and Moore used this control to enrich themselves while purportedly "taking care" of Dr. Sawusch. Over time, Debtor and Moore began hiring numerous individuals purportedly to assist with Dr. Sawusch's affairs. Debtor and Moore paid those individuals with Dr. Sawusch's funds. However, many of these individuals were repeatedly paid for services that benefited Debtor and Moore's business and personal interests—not Dr. Sawusch.

**C. Debtor's Scheme to Defraud Dr. Sawusch and his Estate**

29. In May 2018, Dr. Sawusch began to experience significant psychiatric decompensation, and on May 27, 2018, Dr. Sawusch was found dead at the Malibu Beach House.

30. In the days leading up to Dr. Sawusch's death, on May 23, 2018, Dr. Sawusch experienced a violent reaction to LSD. In a deposition in the state court case, discussed below, Debtor admitted to administering the LSD to Dr. Sawusch. On May 24, 2018, Debtor took Dr. Sawusch for a Ketamine infusion, and upon information and belief, proceeded with the infusion even after being warned by the doctor regarding excessive use.

2687012

31.     In text messages between Debtor and Moore regarding the May 23, 2018 incident, Moore expressed concern that "when [Dr. Sawusch] goes manic and evicts us. . . ." she and Debtor would "[b]e kicked into the streets."  Debtor reassured Moore that "I got a plan."

32.     Upon information and belief, Debtor and Moore implemented that plan, which was to abandon the gradual misappropriation of Dr. Sawusch's assets and to take what they could while they still could.

33.     Within hours of the May 23, 2018 incident, Debtor and Moore initiated two separate $1 million transfers from Dr. Sawusch's brokerage account to Dr. Sawusch's personal account that Debtor controlled pursuant to the power of attorney.  On May 24, 2018, after the first million-dollar transfer cleared, Debtor and Moore made transfers of $350,000 and $1,012,114 to themselves from Dr. Sawusch's account utilizing the POAs.

34.     After Dr. Sawusch's death, Debtor and Moore continued to utilize the fraudulently obtained POAs by making numerous transfers and withdrawals of funds from Dr. Sawusch's financial accounts to defraud Dr. Sawusch's estate, of which Plaintiffs are the beneficiaries.

35.     On May 29, 2018, after the second million-dollar transfer cleared, Debtor and Moore withdrew an additional $300,782 from Dr. Sawusch's account utilizing the power of attorney, and $170,000 of those funds were deposited into Debtor's personal account.

36.     On June 11, 2018, Debtor and Moore transferred $700,120.92 from Dr. Sawusch's account utilizing the power of attorney into Debtor's personal account.

37.     In total, between May 23, 2018 and July 9, 2018, Debtor and Moore used the fraudulently obtained POAs to transfer at least $3,128,856 for their own benefit from the financial accounts of Dr. Sawusch.

38.     In addition to the $3,128,856 transferred from Dr. Sawusch's financial accounts, Debtor and Moore made numerous debit and credit card transactions from Dr. Sawusch's accounts, including but not limited to the following:

a.   May 26, 2018: Debtor and Moore charged $3,626.14 at Barneys of New York and $452.58 at Burke Williams luxury day spa for massages for both Debtor and Moore.

8

2687012

b. May 27, 2018: Debtor and Moore charged $481.00 at Burke Williams luxury day spa for massages for both Debtor and Moore.

c. May 29, 2018: Debtor and Moore had $248.56 worth of food delivered via Postmates from Café Gratitude. Debtor and Moore also charged $276.00 at Burke Williams luxury day spa.

d. June 2, 2018: Debtor and Moore charged $9,503.56 for luggage at Kensington Luggage and $165.57 at Nobu Malibu.

e. June 5, 2018: Debtor and Moore spent $4,667.25 at the Huntley Hotel Santa Monica, $162.90 at Café Gratitude, $118.13 at PC Greens (organic grocery), $149.40 at Whole Foods, and $208.67 at the Sea Blue Hotel.

f. June 8, 2018: Debtor and Moore charged $1,220.14 at Ted Baker London, a high-end clothing store in Santa Monica.

g. June 10, 2018: Debtor and Moore spent $289.85 at Erewhon Market, $2,477.90 at the Apple store, $220.50 at Tory Burch, and $992.25 at Coach.

h. June 13, 2018: Debtor and Moore spent $1,270 at Encino Smile Center.

i. June 16, 2018: Debtor and Moore spent $3,031.88 at Kensington Luggage.

j. June 20, 2018: Debtor and Moore spent $1,646.72 at Nobu Malibu.

39. The court-appointed receiver in the state court action, discussed below, concluded that Debtor and Moore used more than $4.02 million of Dr. Sawusch's funds for their personal use when including credit and debit charges that they paid using Dr. Sawusch's funds.

**D. Debtor's Fraudulent Transfers in Knowing Violation of the TRO**

40. On October 30, 2018, Plaintiffs filed a complaint against Debtor and Moore in the Superior Court of California, County of Los Angeles, initiating case 18SMCV00134 (the "State Court Action"). A true and correct copy of the verified complaint filed in the State Court Action is attached here to as **Exhibit B** and incorporated herein by this reference.

41. On November 9, 2018, the state court entered an order (the "Receivership Order") appointing Theodore Lanes (the "Receiver") as Receiver to take possession, custody and control of Dr. Sawusch's funds as well as multiple items of Dr. Sawusch's business and personal property in

2687012

the possession of Debtor and Moore (the "Receivership Property"). A true and correct copy of the Receivership Order is attached hereto as **Exhibit C** and incorporated herein by this reference.

42.    In connection with the Receivership Order, the state court issued a Temporary Restraining Order ("TRO") directed to Debtor and Moore, ordering and directing them to turnover possession of the Receivership Property and all books and records related to the Receivership Property to the Receiver. The TRO also ordered Debtor and Moore not to "[c]onceal, remove, expend, disburse, transfer, assign, sell, convey, devise, pledge, create a security interest in, encumber, or in any manner deal in or dispose of the whole or any part of the Receivership Property." *See* Exhibit A.

43.    On or about November 13, 2018, Debtor and Moore were served with the TRO.

44.    As of the date they were served with the Receivership Order, Debtor and Moore held more than $2.3 million of Dr. Sawusch's funds in various accounts as follows:

| Bank Name | Amount | Name on Account |
|---|---|---|
| Citibank #4899 | $66,144.67 | Moore |
| Citibank #8631 | $9.00 | Moore |
| Citibank #1511 | $29,503.36 | Debtor, DBA |
| Citibank #1529 | $2,117.40 | Debtor, DBA |
| Citibank #7002 | $5,001.48 | Debtor, DBA |
| Citibank #7010 | $204,980.16 | Debtor, DBA |
| Vanguard #5065 | $2,020,648.50 | Debtor and Moore |

45.    Between November 15, 2018 and December 28, 2018, Debtor and Moore continued to transfer Dr. Sawusch's funds in and out of various personal and business accounts in knowing violation of the TRO. During this same period, Debtor and Moore also withdrew a significant amount of Dr. Sawusch's funds for their personal use (together, the "Further Transfers").

46.    On November 15, 2018, Debtor and Moore exchanged the following text messages in regard to their attempt to circumvent the TRO and their attempt to withdraw and deposit funds in knowing violation of the TRO:

   a.    Moore: They are giving me trouble at this branch. They said going bank to bank is a red flag… Stick with Mercedes Sprinter as reason. Stay calm. Speak slowly. Do not

2687012

get agitated… we can always go back out tomorrow… These accts are not frozen… A flag has been placed on our acct. Abort… Stop. They will not allow bank hopping…

    b.  Debtor: Can you get several 10,000 [cashier's checks] for Anton. I will go get a 10,000 cashiers check for Anna Moore…

    c.  Moore: I cannot get cashiers checks to you bc you have no chx acct right now..Let us keep a Level head. Cashiers checks are not cash…

[An exchange of text messages followed regarding checks to other individuals.]

    d.  Debtor: Make it out to Ernesto Santiago Flores…Patricia Hinojos $10,000 [Debtor's mother] Ernesto Santiago Flores [Debtor's father] Forest Walters [friend] Alfred Hinojos [Debtor's brother]…

    e.  Moore: Hmmm I feel uncertain about those checks

    f.  Debtor: Or we can wire.

    g.  Moore: We will wire all to ernie flores [Debtor's father].

47.    The Further Transfers included the following:

    a.  November 15, 2018: two separate withdrawals of $10,000 from Citibank Account #7010 (Debtor DBA Account); Ms. Moore transferred $40,000 from Citibank Account #4899 (Moore Account) to Citibank Account #8631 (Moore Account).

    b.  November 16, 2018: Debtor and Ms. Moore transferred $15,000 from Citibank Account #7010 (Debtor DBA Account) to Citibank Account #1529 (Debtor DBA Account); Debtor and Ms. Moore withdrew $30,000 from Citibank Account #8631 (Moore) and transferred $30,000 to Citibank Account #7010 (Debtor DBA Account), and transferred $9,500 to #4899 (Moore Account). Debtor and Ms. Moore wire transferred $100,000 from Citibank Account #7010 (Debtor DBA Account) to an unknown account.

    c.  November 23, 2018: Debtor and Ms. Moore transferred $5,500 from Citibank Account #1511 (Debtor DBA Account) to Citibank Account #7010 (Debtor DBA Account).

2687012

d. November 27, 2018: Debtor and Ms. Moore transferred $20,000 from Citibank Account #7010 (Debtor DBA Account) to Citibank Account #1511 (Debtor DBA Account).

e. November 29, 2018: Debtor and Ms. Moore transferred $85,000 from Citibank Account #7010 (Debtor DBA Account) to an unknown destination, leaving only $463.16 in the account.

f. November 30, 2018: Debtor and Ms. Moore deposited $5,000 into Citibank Account #7010 from an unknown source; $12,800 was then transferred into Citibank Account #1511 (Debtor DBA Account) from unknown sources.

g. December 3, 2018: Debtor and Ms. Moore withdrew $15,000 from Citibank Account #1511 (Debtor DBA Account).

h. December 7, 2018: Debtor and Ms. Moore withdrew $4,198 from Citibank Account #1511 (Debtor DBA Account).

i. December 20, 2018: Debtor and Ms. Moore withdrew $9,000 from Citibank Account #1511 (Debtor DBA Account).

j. December 27, 2018: Debtor and Ms. Moore withdrew a total of $26,080.04 from multiple Debtor DBA accounts: $20,424.75 from Citibank Account #1511, $280.20 from Citibank Account #1529, and $5,375 from Citibank Account #7010. Those funds were taken in a single certified bank check payable to Debtor and Ms. Moore and Debtor's DBA.

k. December 27, 2018: Debtor and Ms. Moore withdrew $19,691.67 from Citibank Account #4899 (Moore); Ms. Moore transferred $97.97 to Citibank Account #4907 (Moore Account) to cure an overdraft; $90.99 was transferred to Citibank Account #8631 to cure an overdraft; and $19,502.71 was taken in a certified check payable to Debtor and Ms. Moore and Debtor's DBA.

l. December 28, 2018: Debtor and Ms. Moore withdrew $6,000 and $10,000 in separate transactions from Citibank Account #1511 (Debtor DBA Account).

2687012

### E. The Judgment and Amended Judgment

48.     Through the State Court Action, approximately $2.1 million of Dr. Sawusch's funds that were in the possession of Debtor and Moore were frozen and subsequently returned to the Receiver. However, the balance of Dr. Sawusch's funds that Debtor and Moore fraudulently obtained have yet to be returned to Dr. Sawusch's estate.

49.     During the course of the State Court Action, the Plaintiffs, Debtor and Moore attended a mediation, which resulted in a settlement agreement (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit D** and incorporated herein by this reference. In the Settlement Agreement, in relevant part, the Debtor agreed to entry of a judgment in the amount of $1 million and a release of all claims, losses, damages and causes of action, whether known or unknown, against Plaintiffs and the Estate of Dr. Sawusch, among others. Additionally, Debtor agreed that the $1 million judgment would not be dischargeable in any bankruptcy proceeding filed by himself, Moore or any of their creditors.

50.     On July 6, 2020, based on the Settlement Agreement, the state court entered a stipulated judgment in favor of Plaintiffs and against Debtor and Moore, jointly and severally, in the principal amount of $1 million (the "Judgment"). A true and correct copy of the Judgment is attached hereto as **Exhibit E** and incorporated herein by this reference.

51.     On October 1, 2020, the state court entered an order amending the Judgment adding 3rd Star Creative, Anton David, Inc., Fulton Yoga Collective, and Central Valley Window Cleaning, Inc. to the Judgment as joint and several judgment debtors for the full amount due under the Judgment as alter egos of Debtor and Moore (the "Amended Judgment"). A true and correct copy of the Amended Judgment is attached hereto as **Exhibit F** and incorporated herein by this reference.

### FIRST CLAIM FOR RELIEF

### (FALSE PRETENSES, FALSE REPRESENTATION OR ACTUAL FRAUD)

### [11 U.S.C. § 523(a)(2)(A)]

52.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 51 of this Complaint as if set forth at length herein.

53.     Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

2687012

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

54.     All or part of the debt owed to Plaintiffs is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code §§ 523(a)(2)(A).

55.     Plaintiffs have alleged numerous misrepresentations, omissions and deceptive conduct by Debtor related to him obtaining Dr. Sawusch's funds.  Debtor moved into the Malibu Beach House under false pretenses representing himself to Dr. Sawusch as a spiritual guide, health practitioner, and caretaker.  Debtor also represented to Dr. Sawusch that he had decades of experience and training in managing investment portfolios and multi-million-dollar investment and brokerage accounts.  In reality, Debtor operated a window cleaning service in Clovis, California, and was not licensed in nor did he have any formal training or experience as a caretaker, in mental health treatment, physical therapy, medical training or spiritual guidance, or in managing multi-million dollar investment portfolios or brokerage accounts.  Debtor used these misrepresentations in order to obtain the POAs, which gave Debtor access to Dr. Sawusch's funds.

56.     Debtor knew of the falsity and deceptiveness of his statements and conduct and always intended to deceive Dr. Sawusch as evidenced by his text messages to Eric Shimp, Jerry Barraccuda and Moore.  Debtor knew that Dr. Sawusch was highly vulnerable and suffering from a serious, debilitating mental illness.  Debtor used Dr. Sawusch's disabilities to cultivate a trusting relationship with Dr. Sawusch, such that Debtor was able to procure the POAs.

57.     Dr. Sawusch did actually rely upon Debtor's misrepresentations Dr. Sawusch suffered from severe mental illness, which significantly impaired his ability to care for his personal health and manage his financial affairs, and left him highly susceptible to Debtor's undue influence and fraud.  Dr. Sawusch relied on Debtor's misrepresentations, feigned affection for, and friendship with

2687012

1  Dr. Sawusch when executing the POAs. Without these misrepresentations, Dr. Sawusch would

2  never have agreed to execute the POAs.

3        58.    As a direct and proximate result of Debtor's misrepresentations and deceptive

4  conduct, Dr. Sawusch and his estate, of which Plaintiffs are the beneficiaries, have been damaged in

5  the amount of the Amended Judgment.

6        59.    The Amended Judgment should be deemed nondischargeable under 11 U.S.C. §

7  523(a)(2)(A).

8  **SECOND CLAIM FOR RELIEF**

9  **(FIDUCIARY DEFALCATION, EMBEZZLEMENT, OR LARCENY)**

10  **[11 U.S.C. § 523(a)(4)]**

11        60.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 59 of

12  this Complaint as if set forth at length herein.

13        61.    Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

14      (a) A discharge under section 727, 1141, 1228(a), 1228(b) or
    1328(b) of this title does not discharge an individual debtor from

15      any debt—

16      . . .
    (4) for fraud or defalcation while acting in a fiduciary capacity,

17      embezzlement, or larceny . . . .

18        62.    All or part of the debt owed to Plaintiffs was due to fraud or defalcation while acting

19  in a fiduciary capacity, or to embezzlement, or to larceny.

20  **Fiduciary Defalcation**

21        63.    Debtor owed Dr. Sawusch fiduciary duties pursuant to the POAs and as Dr.

22  Sawusch's caretaker, for which Debtor received compensation.

23        64.    Debtor wrongfully violated his fiduciary duties by, among other things, converting

24  and concealing approximately $3.1 million of Dr. Sawusch's funds, and by misappropriating the

25  converted funds to his own use and benefit. These actions are the opposite of safeguarding that

26  which was entrusted to Debtor, Debtor instead recklessly and intentionally engaged in anti-fiduciary

27  behavior to keep Dr. Sawusch's funds for himself.

28

15

2687012

65.     As a direct and proximate result of Debtor's violation of his fiduciary duties, Dr. Sawusch and his estate, of which Plaintiffs are the beneficiaries, have been damaged in the amount of the Amended Judgment.

### Embezzlement

66.     Debtor embezzled Dr. Sawusch's funds.  Debtor came into possession of the property owned by Dr. Sawusch because of Dr. Sawusch's trust in Debtor.  Debtor misappropriated at least $3.1 million of Dr. Sawusch's funds for his own personal use and benefit in direct violation of the POAs.  The Debtor did so under circumstances indicating fraud.  On May 23, 2018, the day of Dr. Sawusch's bad reaction to the LSD, and mere days before his death, Debtor and Moore were worried that Dr. Sawusch would evict them from the Malibu Beach House.  However, as evidenced by their text message exchange, Debtor devised a plan to misappropriate Dr. Sawusch's funds.  Debtor immediately began using the fraudulently obtained POAs to transfer Dr. Sawusch's funds to Debtor's accounts.  Debtor continued to misappropriate the funds even after being served with the TRO in knowing violation of the court order.  Debtor's knowledge is further evidenced by his text message exchange with Moore attempting to circumvent the TRO.

67.     Debtor thus had wrongful intent and it was substantially certain that financial harm would come to Dr. Sawusch and his estate as a result of Debtor's wrongful embezzlement of Dr. Sawusch's property.

68.     As a direct and proximate result of Debtor's embezzlement of Dr. Sawusch's funds, Dr. Sawusch and his estate, of which Plaintiffs are the beneficiaries, have been damaged in the amount of the Amended Judgment.

### Larceny

69.     Debtor also committed larceny with respect to some or all of Dr. Sawusch's property.  Dr. Sawusch's funds should never should have been in Debtor's control in the first place and was wrongfully and originally converted.  Debtor fraudulently obtained the POAs and then utilized the fraudulent POAs to transfer Dr. Sawusch's property to himself in knowing violation of the provisions of the POAs and the TRO.

2687012

70.     Additionally, Debtor committed larceny with respect to all Dr. Sawusch's funds Debtor transferred after Dr. Sawusch's death.  Pursuant to the POAs and Cal. Prob. Code § 4152(a)(4), the authority of an attorney-in-fact under a power of attorney is terminated upon the death of the principal.  Accordingly, once Dr. Sawusch had passed, the powers granted to Debtor through the fraudulently obtained POAs terminated.  Yet, Debtor knowing that Dr. Sawusch passed, continued to utilize the fraudulently obtained POAs to misappropriate Dr. Sawusch's funds.

71.     Debtor thus had wrongful intent and it was substantially certain that financial harm would come to Dr. Sawusch and his estate as a result of Debtor's wrongful larceny of Dr. Sawusch's property.

72.     As a direct and proximate result of Debtor's larceny of Dr. Sawusch's funds, Dr. Sawusch and his estate, of which Plaintiffs are the beneficiaries, have been damaged in the amount of the Amended Judgment.

73.     There is no just cause or excuse for Debtor's unlawful conduct.

74.     The Amended Judgment should be deemed nondischargeable under 11 U.S.C. § 523(a)(4).

**THIRD CLAIM FOR RELIEF**

**(WILLFUL AND MALICIOUS INJURY)**

**[11 U.S.C. § 523(a)(6)]**

75.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 72 of this Complaint as if set forth at length herein.

76.     Pursuant to 11 U.S.C. § 523(a)(6), a discharge under Section 727 does not discharge a debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

77.     Debtor knowingly and maliciously converted at least $3.1 million of Dr. Sawusch's funds to his own personal use and gain.  Neither of the POAs obtained by Debtor included authorization for Debtor to transfer Dr. Sawusch's property to himself.  Debtor knew of these provisions because he signed the Notice to Person Accepting the Appointment as Attorney-in-Fact, yet he willfully and maliciously used the POAs to transfers at least $3.1 million of Dr. Sawusch's

2687012

funds from his investment accounts to accounts with Debtor as power of attorney. Debtor then unlawfully and in violation of the TRO further transferred the funds to his own accounts to utilize Dr. Sawusch's assets for his own personal use and gain.

78.    Although approximately $2.1 million was returned to Plaintiffs, Debtor has willfully and maliciously with the intent to injure Dr. Sawusch and his estate, withheld and failed to deliver the additional $1 million of converted funds to Plaintiffs.

79.    As a direct and proximate result of Debtor's willful and malicious injury, Dr. Sawusch and his estate, of which Plaintiffs are the beneficiaries, have been harmed and accordingly obtained the Amended Judgment in the principal amount of $1,000,000.

80.    Debtor intended and/or believed with substantial certainty that his actions would result in the injuries to Dr. Sawusch and his estate as set forth herein and in the Complaint.

81.    There is no just cause or excuse for Debtor's unlawful conduct.

82.    The Amended Judgment should be deemed nondischargeable under 11 U.S.C. § 523(a)(6).

### **RESERVATION OF RIGHTS**

### **(REVOCATION OF DISCHARGE)**

### **[11 U.S.C. §§ 727(a), (c), and (d)]**

83.    Plaintiffs reserve their rights under §§ 727(a), (c), and (d) to seek Court authority to amend the instant Complaint should facts supporting a claim for revocation of discharge arise in the discovery phase of litigation with Debtor.

/ / /

/ / /

/ / /

/ / /

18

2687012

**WHEREFOR**, Plaintiffs pray for judgment as follows:

    a.  For a determination that the Amended Judgment in favor of Plaintiffs and against Debtor is nondischargeable in this bankruptcy case pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6); and

    b.  For such other and further relief as the Court deems just and appropriate.

DATED:  August 24, 2021                    BRUTZKUS GUBNER


By:  /s/ Jessica S. Wellington
    David Seror
    Jessica S. Wellington
Attorneys for Carole Sawusch,
Administrator of the Estate of Mark
Sawusch, and Patsy Ann Sawusch,
Beneficiary of the Estate of Mark Sawusch

19

2687012

# EXHIBIT A

## CALIFORNIA DURABLE POWER OF ATTORNEY

### (California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Mark Sawusch of 20228 Pacific Coast Highway, Malibu, California, 90265-5470, appoint Anthony Flores of 2491 Alluvial Avenue, Suite 71, Clovis, California, 93611, as my agent(s) (attorney-in-fact(s)) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS. TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING. TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

## INITIAL

___ _MS_ (A) Real property transactions.
___ _MS_ (B) Tangible personal property transactions.
___ (C) Stock and bond transactions.
___ (D) Commodity and option transactions.
___ _MS_ (E) Banking and other financial institution transactions.
___ _MS_ (F) Business operating transactions.
___ _MS_ (G) Insurance and annuity transactions.
___ (H) Estate, trust, and other beneficiary transactions.
___ _MS_ (I) Claims and litigation.
___ _MS_ (J) Personal and family maintenance.
___ (K) Benefits from social security, **medicare, medicaid, or other governmental** programs, **or civil or military** service.
___ **(L)** Retirement plan transactions.
___ **(M) Tax** matters.
___ **(N) ALL** OF THE POWERS LISTED ABOVE.

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney.

Page 1
AF00292

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

**This power of attorney shall not be affected by subsequent incapacity of the principal.**

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

**I agree that any third party who receives a copy of this document may act under it.**

**Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.**

Signed this 9th day of September , 20 07 .

_____

*Signature of Principal*

REDACTED

*Principal's Social Security Number*

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITES OF AN AGENT.

# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California )**
**) ss**
**County of** _Los Angeles_ )

On _September 9th 2017_, before me, _Clarissa Chambers_
a Notary **Public in and** for the State of California, personally appeared
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the **instrument.**

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

**Signature** _____

**My commission expires** _____

CLARISSA CHAMBERS
COMM. #2092983
Notary Public - California
Los Angeles County
My Comm. Expires Nov. 25, 2018

AF00294

23

NOTICE TO PERSON EXECUTING DURABLE POWER OF ATTORNEY
(California Probate Code Section 4128(a))

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing.

This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf. This document does not give your agent the power to accept or receive any of your property, in trust or otherwise, as a gift, unless you specifically authorize the agent to accept or receive a gift.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney.

The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property.

You can amend or change this durable power of attorney only by executing a new durable power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this durable power of attorney at any time, so long as you are competent.

This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this durable power of attorney carefully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

_MS_
_____
**Initials of Principal**

Page 4
AF00295

24

## NOTICE TO PERSON ACCEPTING THE APPOINTMENT AS ATTORNEY-IN-FACT

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

The legal duty to act solely in the interest of the principal and to avoid conflicts

The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under Penal Code Section 368. In addition to criminal prosecution, you may also be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Date  9/8/17

_____
Signature of Agent

Anthony David Flores
Print-Name **of Agent**

AF00296

25

# CALIFORNIA DURABLE POWER OF ATTORNEY

### (California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Mark Sawusch of 20628 Pacific Coast Highway, Malibu, California, 90265-5420, appoint Anthony Flores of 2691 Alluvial Avenue, Suite 71, Clovis, California, 93611, as my agent(s) (attorney(s)-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS. TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING. TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

## INITIAL

_MS_ (A) Real property transactions.

_MS_ (B) Tangible personal property transactions.

_MS_ (C) Stock and bond transactions.

_MS_ (D) Commodity and option transactions.

_MS_ (E) Banking and other financial institution transactions.

_MS_ (F) Business operating transactions.

_MS_ (G) Insurance and annuity transactions.

_____ (H) Estate, trust, and other beneficiary transactions.

_MS_ (I) Claims and litigation.

_MS_ (J) Personal and family maintenance.

_MS_ (K) Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.

_____ (L) Retirement plan transactions.

_MS_ (M) Tax matters.

_____ (N) ALL OF THE POWERS LISTED ABOVE.

### YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney.

California Durable Power of Attorney - Mark Raymond Sawusch - Page 1 of 5    **AF00287**

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

**This power of attorney shall not be affected by subsequent incapacity of the principal.**

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

**I agree that any third party who receives a copy of this document may act under it.**

Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

**Signed this** 12th **day of** September , 20 17 .

**Signature** of Principal

REDACTED

**Principal's** Social Security Number

BY ACCEPTING OR ACTING UNDER **THE APPOINTMENT, THE AGENT ASSUMES THE** FIDUCIARY AND OTHER LEGAL **RESPONSIBILITIES OF AN AGENT.**

# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
  ) ss
County of  LOS ANGELES  )

On _December 2th, 2017_, before me, _Clarissa Chambers_,
a Notary Public in and for the State of California, personally appeared
_MR K Sawusch_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

My commission expires _September 29, 2018_



California Durable Power of Attorney - Mark Raymond Sawusch - Page 3 of 5      AF00289

## NOTICE TO PERSON EXECUTING DURABLE POWER OF ATTORNEY
### (California Probate Code Section 4128(a))

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing.

This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf. This document does not give your agent the power to accept or receive any of your property, in trust or otherwise, as a gift, unless you specifically authorize the agent to accept or receive a gift.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney.

The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property.

You can amend or change this durable power of attorney only by executing a new durable power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this durable power of attorney at any time, so long as you are competent.

This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this durable power of attorney carefully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

_MS_
_____
**Initials of Principal**

### NOTICE TO PERSON ACCEPTING THE APPOINTMENT AS ATTORNEY-IN-FACT

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

   The legal duty to act solely in the interest of the principal and to avoid conflicts

   The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you, the Agent, Anthony David Flores.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under Penal Code Section 368. In addition to criminal prosecution, you may also be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Date: 9/13/2017

_____
Signature of Agent

Anthony David Flores
_____
Print Name **of Agent**

Date: 9-13-17

_____
Signature of Principal

Mark Sawusch
_____
**Print Name of Principal**

REDACTED
_____
**Social Security Number of Principal**

REDACTED
_____
**Date Of Birth of Principal**

California Durable Power of Attorney - Mark Raymond Sawusch - Page 5 of 5    **AF00291**

# EXHIBIT B

BUCHALTER
A Professional Corporation
MARK T. CRAMER (SBN: 198952)
DAVID E. MARK (SBN: 247283)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA  90017-1730
Telephone: (213) 891-0700
Fax: (213) 896-0400
E-mail: mcramer@buchalter.com

Attorneys for Plaintiff PATSY ANN SAWUSCH,
beneficiary of the Estate of Mark Sawusch

Shawn S. Kerendian (SBN 251655)
     shawn@keystone-law.com
Roee Kaufman (SBN 293609)
     roee@keystone-law.com
Samuel L. Birdsong (SBN 251594)
     samuel@keystone-law.com
KEYSTONE LAW GROUP, P.C.
11300 W. Olympic Blvd., Ste. 910
Los Angeles, California 90064
Tel:     310.444.9060
Fax:    310.444.9092

Attorneys for Plaintiff CAROLE SAWUSCH,
Administrator of the Estate of Mark Sawusch

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

OCT 30 2018

Sherri R. Carter, Executive Officer/Clerk
By Romunda Clifton,  Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – WEST JUDICIAL DISTRICT

| | |
|---|---|
| CAROLE SAWUSCH, Administrator of the Estate of Mark Sawusch, and PATSY ANN SAWUSCH, beneficiary of the Estate of Mark Sawusch,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHONY DAVID FLORES a.k.a., ANTON DAVID, individually and as purported Attorney-in-Fact for Decedent, Mark Sawusch; ANNA MOORE, an individual; and DOES 1-110, inclusive,<br><br>Defendants. | CASE NO. 18SMCV00134<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1.  **ORDER INVALIDATING PURPORTED GIFTS TO CARETAKERS BASED ON LACK OF CAPACITY, UNDUE INFLUENCE, AND FRAUD, AND FOR AN ORDER CONVEYING SUCH ASSETS TO THE ESTATE**<br><br>2.  **FINANCIAL ELDER ABUSE**<br><br>3.  **CONVERSION**<br><br>4.  **UNJUST ENRICHMENT**<br><br>5.  **ACCOUNTING BY ATTORNEY-IN-FACT** |

| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |

6.   **BREACH OF CONTRACT**

7.   **RECOVERY OF PERSONAL PROPERTY**

8.   **BREACH OF FIDUCIARY DUTY**

9.   **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

10.   **DECLARATORY RELIEF**

11.   **CANCELLATION OF INSTRUMENT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

2

**VERIFIED COMPLAINT**

Plaintiffs Carole Sawusch, Administrator of the Estate of Mark Sawusch, and Patsy Ann Sawusch, beneficiary of the Estate of Mark Sawusch, complain and allege as follows:

## BACKGROUND AND GENERAL INFORMATION

**A.     Parties.**

1.     Plaintiff Carole Sawusch ("Carole"), is an individual residing in the State of Florida, and is the duly appointed Administrator of the Estate of Mark Sawusch (the "Estate"). Carole is the sole living sibling of decedent, Mark Sawusch, M.D. ("Decedent").

2.     Plaintiff Patsy Ann Sawusch ("Pat," and together with Carole, "Plaintiffs") is an individual residing in the State of Florida, and is the beneficiary of the California Statutory Will of Mark Raymond Sawusch, dated January 5, 2014 ("Will"), which is subject to a decedent's estate administration proceeding titled *Estate of Mark Sawusch* ("Estate") in the Los Angeles Superior Court, Case No. 18STPB05726 ("Estate Proceeding").

3.     On June 20, 2018, Carole filed her Petition for Probate of Lost Will and for Letters of Administration and Authorization to Administer under the Independent Administration of Estates Act ("General Petition"), submitting to probate the Will, which names Decedent's parents, Pat and Robert Sawusch ("Robert") as sole beneficiaries of the Estate. Robert predeceased Decedent leaving Pat as the sole named beneficiary of the Will. At the hearing on the General Petition on September 17, 2018, Carole was appointed as the Administrator with Will Annexed. A copy of the Letters of Administration with Will Annexed, which was entered by the Court on September 17, 2018, is attached as **Exhibit "A."**

4.     Plaintiffs are informed and believe that Defendants Anthony David Flores, a.k.a. Anton David ("Anton"), and Anna Moore ("Anna," and together with Anton, the "Defendants") are individuals residing in the State of California in the Country of Los Angeles. Plaintiffs are also informed and believe that Anton and Anna were caretakers paid to provide in-home health and social services to Decedent at Decedent's home in Malibu, California. Anton also purports to have been Decedent's purported attorney-in-fact. As set forth more fully below, Plaintiffs are informed and believe that Anton and Anna utilized their close and confidential relationship with Decedent as his paid caretakers and, as to Anton only, as Decedent's purported attorney-in-fact,

to take advantage of Decedent and ultimately misappropriate substantial property worth millions of dollars from Decedent to the detriment of Decedent and the Estate, including, but not limited to, at least $3,147,887.89 in cash, plus additional personal property belonging to Decedent.

5. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants, DOES 1 through 110, inclusive, are unknown to Plaintiffs at the present time. Plaintiffs therefore sue said Defendants by such fictitious names and will seek leave of the Court to amend this complaint to set forth their true names and capacities when the same has been ascertained.

6. Plaintiffs are informed and believe that each of the Defendants, including DOES 1 through 110, inclusive, were, at all times herein mentioned, acting in concert with, in conspiracy with, or aiding and abetting, each and every one of the remaining Defendants. Specifically, although Anton was purportedly the sole attorney-in-fact for Decedent, Plaintiffs are informed and believe that Anna and Anton conspired together to utilize Anton's powers as Decedent's purported attorney-in-fact to misappropriate Decedent's assets for their own benefit. DOES 1 through 20 are believed to have knowingly received misappropriated assets of the Estate.

7. Pursuant to Carole's authority as Administrator, Carole obtained records from several institutions that revealed many of the wrongful actions undertaken by Anton and Anna against Decedent and the Estate under the guise of a Power of Attorney and in their roles as Decedent's caretakers. The full extent of Anton's and Anna's misappropriation of Decedent's assets is not yet known, although Plaintiffs are informed and believe that Anton and Anna have misappropriated at least $3,147,887.89 from Decedent or the Estate in cash alone as well as additional assets, including, but not limited to, medical equipment, business records, and other personal property (collectively, "Misappropriated Assets"), in an amount subject to proof at trial.

8. Decedent was, at all times material hereto, a resident of the State of California, County of Los Angeles. As set forth more fully below, Decedent was a board-certified ophthalmologist with a successful medical practice located in Pacific Palisades, California. Decedent regrettably passed away on May 27, 2018, at his home in the City of Malibu, County of Los Angeles, California.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

4

**VERIFIED COMPLAINT**

## B. Decedent's Vulnerable State.

9. In the years preceding his death, Decedent was a prominent, board-certified ophthalmologist with a successful medical practice in Pacific Palisades, California. Plaintiffs are informed and believe that Decedent operated his medical practice for more than 30 years.

10. Plaintiffs are informed and believe that in or around November 2016, Decedent sustained severe burns to his hands, which rendered him physically disabled and unable to perform surgery, derailing his medical practice.

11. Plaintiffs are further informed and believe that Decedent suffered from severe bipolar disorder, which caused him to experience extreme mood swings, with prolonged manic and depressive states characterized by erratic behavior and severe depression.

12. Plaintiffs are informed and believe that Decedent's mental illness worsened significantly in late 2016 and 2017 as a result of his physical disability, the death of Decedent's father, the deterioration of Decedent's medical career, a break-up with a girlfriend, and various legal troubles. Plaintiffs are informed and believe that as a direct and proximate result of Decedent's cognitive impairment owing to his bipolar disorder, Decedent became unable to care for himself or manage his daily activities. Plaintiffs are also informed and believe that Decedent's mental decline was so severe that at the time of his death, Decedent was receiving weekly injections of Ketamine to treat his bipolar disorder.

13. Plaintiffs are further informed and believe that Decedent experienced multiple severe and prolonged manic episodes during late 2016 and throughout 2017 that caused him to be arrested and jailed on multiple occasions on various charges, including vandalism, refusal to pay restaurant bills, public intoxication, and battery. Plaintiffs are also informed and believe that the foregoing arrests resulted in Decedent spending time in county jail in or around July or August 2017.

14. Plaintiffs are further informed and believe that Decedent's manic episodes also caused Decedent to be hospitalized involuntarily under Welfare and Institutions Code section 5150 on several occasions throughout 2017, including in April 2017, May 2017, and July 2017.

15. As a result of the foregoing, Plaintiffs are informed and believe that Decedent was

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

5

**VERIFIED COMPLAINT**

1    gravely mentally ill, suffered severe cognitive impairment, lacked all forms of decisional

2    capacity, and was highly susceptible to undue influence and fraud beginning in or around

3    November 2016, and continuing through his death on May 27, 2018.

4    **C.    Less Than Three Months After Meeting the Caretakers, Decedent Gives**

5    **Anton Full Control Over His Nearly $80 Million in Assets.**

6    16.    In or around late June 2017, and after Decedent had been involuntarily

7    hospitalized on several occasions, Decedent first met Defendants, Anton and Anna. Plaintiffs are

8    informed and believe that shortly thereafter, in or around July 2017, Anton and Anna moved in to

9    Decedent's home located at 20228 Pacific Coast Highway, Malibu, California 90265, where they

10    resided with Decedent until shortly before his death, and began assuming the role of Decedent's

11    paid caretakers.  Plaintiffs are also informed and believe that neither Anton nor Anna had any

12    particular experience or training in dealing with individuals suffering from severe bipolar disorder

13    or in managing an investment portfolio, and thus had no expertise relevant to taking care of

14    Decedent or managing his multi-million dollar investment and brokerage accounts.

15    17.    Plaintiffs are further informed and believe that Anton and Anna utilized affection

16    and feigned friendship with Decedent, who was desperately alone, to cultivate a trusting

17    relationship with Decedent. Plaintiffs are informed and believe that this was nothing more than a

18    ploy by Anton and Anna to convince Decedent—a wealthy, vulnerable man suffering from severe

19    mental illness—to grant them housing and access to his substantial finances so that they could

20    live on Decedent's largesse and misappropriate Decedent's assets to their own end.

21    18.    As a direct result of Decedent's diminished capacity and Anton's and Anna's

22    undue influence, Anton purportedly obtained a Durable Power of Attorney from Decedent on

23    September 9, 2017 (the "September 9 POA"), a mere three months after meeting Decedent,

24    although the September 9 POA did not provide full access to all of Decedent's investment and

25    brokerage accounts. A true and correct copy of the September 9 POA is attached as **Exhibit "B"**

26    and is incorporated herein by reference.

27    19.    Three days later, on September 12, 2017, while Decedent was still under Anton's

28    and Anna's undue influence, and still suffering from diminished capacity, Anton purported to

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

6

**VERIFIED COMPLAINT**

1 | obtain a *second* Durable Power of Attorney from Decedent (the "September 12 POA," and,
2 | collectively, with the "September 9 POA," the "POAs") that purportedly expanded the powers
3 | granted to Anton to include stock and bond transactions, commodity and option transactions,
4 | personal and family maintenance, benefits from social security, Medicare, Medicaid, or other
5 | governmental programs (including civil or military service), and tax matters. A true and correct
6 | copy of the September 12 POA is attached as **Exhibit "C"** and is incorporated herein by
7 | reference. The additional powers purportedly conveyed to Anton were significant, as Decedent's
8 | brokerage account held, at that time, securities with a fair market value in excess of $80 million.
9 | Owing to Anton's and Anna's undue influence, and Decedent's diminished capacity, the POAs
10 | were ineffective and void from inception. As a result, Anton purported to be Decedent's
11 | attorney-in-fact when he was never so authorized.

12 | **D.    The Caretakers Withdraw Millions of Dollars From Decedent's Accounts,**
13 | **Some of Which Were Made *After* Decedent's Death.**

14 | 20.    Plaintiffs are informed and believe that Anton and Anna, utilizing Anton's position
15 | as Decedent's purported attorney-in-fact, gained access to and misappropriated Decedent's assets
16 | by, among other things: closing Decedent's bank accounts (which, Plaintiffs are informed and
17 | believe resulted in the filing of a report with Adult Protective Services by the bank), opening new
18 | bank accounts in the names of Decedent and Anton[1] and then making unauthorized transfers from
19 | those accounts to accounts controlled by Anton or Anna, and misappropriating other personal
20 | property belonging to Decedent both prior to and after Decedent's death.

21 | 21.    In May and June 2018 alone, $2,679,761.69 was transferred from two of
22 | Decedent's bank accounts to an account which did not, and does not, belong to Decedent or the
23 | Estate but which account, Plaintiffs are informed and believe, belongs to or is controlled by
24 | Anton. For example, three such transfers totaling $1,676,179.32 took place on May 23 and May
25 | 24, 2018, three days before Decedent's death. May 24, 2018 was the same date that Decedent was

26 | [1] The accounts were opened in Anton's purported capacity as the holder of Decedent's purported POAs. The funds
27 | or other assets in these accounts all exclusively belonged to Decedent; Anton's name was purportedly added to the
     | accounts to facilitate his assisting Decedent. Plaintiffs are informed and believe that the real reason Anton's name
28 | was added to Decedent's accounts was to allow Anton to have access to the accounts so that he could withdraw or
     | transfer funds without Decedent's knowledge or consent.

7
**VERIFIED COMPLAINT**

1  noted to be in a manic state before and during an infusion of Ketamine—a medication that can,

2  among other things, cause patients to enter into a trance-like state—and exhibited odd behavior

3  compared to his normal behavior from more than 40 previous treatment sessions. Additionally,

4  transfers in excess of $700,000.00 were made from one of Decedent's accounts in June 2018, the

5  month *after* Decedent's death, at a time when Anton no longer had any purported legal basis for

6  accessing Decedent's accounts (the purported POAs having terminated at Decedent's death).

7      22.    Aside from the transfers to his personal accounts, Anton stole additional funds

8  from Decedent's accounts after Decedent's death, through (1) continued personal use of a credit

9  card (on Decedent's account) that Anton was issued to help pay Decedent's expenses while

10  Decedent was still alive and (2) substantial counter withdrawals from Decedent's bank accounts.

11  On May 29, 2018 (two days <u>after</u> Decedent's death), Anton made a $1 million disbursement from

12  Decedent's investment account to a bank account held in Decedent and Anton's names, and then

13  Anton personally withdrew a total of $300,782.00 from that account that same day.

14      23.    Plaintiffs are informed and believe that between September 14, 2017 and July 9,

15  2018, Anton and Anna have collectively stolen a total of at least $3,147,887.89 from Decedent's

16  financial accounts.

17      24.    In order to prevent Decedent from detecting Defendants' theft, Anton had

18  Decedent's mail sent to Anton's personal mailbox.

19      25.    Plaintiffs are further informed and believe that Anton and Anna are in possession

20  of Decedent's medical equipment and business records relating to Decedent's medical practice.

21  Plaintiffs are informed and believe that Anton and Decedent moved the medical equipment and

22  business records to two storage units in November 2017 following the eviction of Decedent's

23  medical practice by his then-landlord; one storage unit was closed by Anton in January 2018, and

24  the second storage unit was closed and emptied by Anton in June 2018, after Decedent's death.

25  Despite requests for the return of the business records and medical equipment by Plaintiffs'

26  counsel, Anton and Anna have refused to surrender those documents and equipment, depriving

27  the Estate of valuable assets and important records.

28

## STANDING

26.     Pursuant to Code of Civil Procedure sections 369(a)(1), 377.30 and 377.40, Carole, as Administrator and personal representative of the Estate, has standing to bring this action on behalf of the Estate. Carole, as Administrator and personal representative, also has standing pursuant to Probate Code section 8544(a)(3) to commence litigation on behalf of the Estate.

27.     Pursuant to Probate Code section 9654, Pat, as a beneficiary of the Estate, has standing, either alone or jointly with Carole as personal representative, to bring this action.

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over Defendants, and each of them, based on the fact that they reside in California, or they have done and regularly do business in the State of California, including doing business with Plaintiffs which ultimately gave rise to this action.

29.     Venue is proper in this Court due to the fact that a substantial part of the events and/or omissions giving rise to this action occurred in Los Angeles County, and the fact that one or more of the Defendants reside in this district.

## FIRST CAUSE OF ACTION

**Order Invalidating Purported Gifts to Caretakers Based on Lack of Capacity, Undue Influence and Fraud, and for an Order Conveying Such Assets to the Estate by Plaintiffs against Defendants, Anton, Individually and as purported Attorney-in-Fact, Anna, and DOES 1 through 10**

30.     Plaintiffs reallege and fully incorporate by reference all of the above allegations.

31.     Pursuant to California Probate Code section 850(a)(2)(D), a personal representative or any interested person may petition the court for an order where the decedent had a claim to personal or real property, title to or possession of which is held by another.

**A.      As Caretakers, Any Purported Gift Is Presumptively the Product of Undue Influence and Fraud.**

32.     A donative transfer is presumed to be the product of fraud or undue influence when it is made to a "care custodian of a transferor who is a dependent adult, but only if the

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

9

**VERIFIED COMPLAINT**

1  instrument was executed during the period in which the care custodian provided services to the

2  transferor, or within 90 days before or after that period." (Probate Code § 21380(a)(3).)

3      33.    A "care custodian" is a person who provides health and social services to a

4  dependent adult. (Probate Code § 21362(a); *see also* Welfare & Institutions Code § 15610.17.)

5      34.    "Health and social services" includes, but is not limited to, "the administration of

6  medicine, medical testing, wound care, assistance with hygiene, companionship, housekeeping,

7  shopping, cooking, and assistance with finances." (Probate Code § 21362(b).)

8      35.    Plaintiffs are informed and believe that Anton and Anna resided with Decedent at

9  Decedent's residence in Malibu, California, and acted as Decedent's care custodians from July

10  2017 until shortly before Decedent's death in May 2018. Plaintiffs are also informed and believe

11  that Anton and Anna assisted Decedent with his medical, health, social and financial needs,

12  including paying bills, providing companionship, shopping, and other tasks Decedent could no

13  longer manage by himself due to his poor mental health. Indeed, on or about August 11, 2017,

14  Anton and Anna wrote a letter to Plaintiff and to Decedent's mother, Pat, in which they

15  acknowledged they were working as caretakers for Decedent and requested payment for their care

16  of Decedent in that capacity. A true and correct copy of the August 11, 2017 letter is attached as

17  **Exhibit "D"** and is incorporated herein by reference.

18      36.    A "dependent adult" is a resident of California suffering from physical or mental

19  limitations that restrict his or her ability to carry out normal activities or to protect his or her

20  rights, and includes, *inter alia,* any individual aged 18-64 who is admitted as an inpatient to a 24-

21  hour health facility, as defined in Sections 1250, 1250.2, and 1250.3 of the Health and Safety

22  Code. (Welfare & Institutions Code § 15610.23.)

23      37.    At all material times, Decedent's declining mental state and severe bipolar

24  disorder rendered Decedent unable to carry out normal activities, protect his rights, or resist

25  undue influence and fraud. Decedent was also admitted to three separate psychiatric health

26  facilities in 2017, as defined in Section 1250.2(a)(1) of the Health and Safety Code, as well as a

27  fourth facility designated and licensed under the American Society of Addiction Medicine

28  (ASAM). (*See* Welfare & Institutions Code § 15610.23(b).) Accordingly, Decedent qualifies as a

"dependent adult" within the meaning of Welfare and Institutions Code section 15610.23.

38.     All of the transfers to Anton and Anna were made at a time when they were acting as Decedent's paid caretakers and while Decedent was a dependent adult, or after Decedent had passed away, and therefore, the presumption of section 21380(b) applies. In total, Anton and Anna misappropriated $3,147,887.89 of cash in withdrawals and transfers alone, in addition to other valuable assets, including, but not limited to, Decedent's medical equipment, business records, and personal property.

**B.**     **As Purported Attorney-in-fact, Any Purported Gift Is Not Permissible Without Express Authorization by the Terms of the Executed Power of Attorney.**

39.     For the reasons alleged above, the purported POAs were void from inception and conveyed no power or authority to Anton or the other Defendants. Even if the POAs were valid when executed, Probate Code section 4465 provides that a statutory form power of attorney under Probate Code section 4400 does not empower the attorney-in-fact to take any action specified in Probate Code section 4264 unless expressly granted to the attorney-in-fact by the statutory form power of attorney.

40.     Probate Code section 4264(c) provides that an attorney-in-fact may not make a gift of the principal's property in trust or otherwise, unless expressly authorized by the power of attorney. Probate Code section 4264(g) provides that the attorney-in-fact may not make a loan to the attorney-in-fact, unless expressly authorized by the power of attorney.

41.     The September 12 POA executed by Decedent is a Uniform Statutory Form Power of Attorney governed by Probate Code sections 4400-4465. (*See* Ex. C.) Under the September 12 POA, Decedent did not grant his purported attorney-in-fact any power to make gifts or to make estate, trust, and other beneficiary transactions, or retirement plan transactions. The September 12 POA also specifically states that "[t]he Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney." Anton therefore <u>did not</u> receive the express authority necessary to make gifts of Decedent's property to any person, including himself, or even to make loans to himself as attorney-in-fact, should Anton

now claim that these substantial monetary and personal property "gifts" were loans.

42.     Furthermore, on page 5 of the September 12 POA, the Notice to Person Accepting the Appointment as Attorney-in-Fact, expressly states that "you may not transfer the principal's property to yourself without full and adequate consideration or <u>accept a gift of the principal's property</u> unless this power of attorney specifically authorizes you to transfer property to yourself or <u>accept a gift of the principal's property</u>." (*See* Ex. C, pg. 5 (emphasis added).) The September 12 POA did not contain the specific authorization for Anton to transfer Decedent's property to himself or to receive Decedent's property as a gift.

43.     Plaintiffs are informed, believe, and thereon allege that Anton, in his capacity as purported attorney-in-fact for Decedent, converted the funds from Decedent's accounts for his and Anna's own personal use and transferred funds from Decedent's accounts into accounts controlled by Anton.

44.     Anton utilized his position as Decedent's purported attorney-in-fact in order to gain access to and misappropriate Decedent's assets by taking possession of Decedent's medical equipment and patient records, and misappropriating other personal property belonging to Decedent, including at least $3,147,887.89 from Decedent's financial accounts.

**C.     <u>Even With No Presumption, Any Purported Gift to the Caretakers is Invalid Due to Decedent's Lack of Capacity and the Exertion of Undue Influence by the Caretakers.</u>**

45.     At the time of the unauthorized transfers from Decedent's bank accounts to Defendants, Decedent was not of sound and disposing mind. Decedent's mental illnesses significantly impaired his ability to care for his personal health matters and to manage his own financial affairs, and rendered him highly susceptible to undue influence and fraud.

46.     Plaintiffs are informed and believe that beginning in late 2016 and continuing through Decedent's date of death, including the times in which funds were transferred from Decedent's accounts to Anton and Anna, Decedent lacked the capacity to understand the nature of his finances and manage his financial portfolio. Indeed, Decedent's financial statements evidence investments purportedly made by Decedent that were erratic and highly volatile and resulted in

1    the loss of more than *$13 million in a single day*.

2        47.    To the extent that Anton and Anna claim that any property received by them from

3    Decedent was a gift from Decedent, such excessive gifts are indicative of Decedent's vulnerable

4    state, poor judgment, cognitive impairment, and lack of capacity. Decedent's failure to appreciate

5    the dangers associated with allowing Anton and Anna—who were essentially strangers to him—

6    into his home and allowing Anton access to his personal accounts through the purported POAs is

7    further evidence of Decedent's lack of capacity.

8        48.    But whether or not the aforementioned presumptions apply, Anton and Anna have

9    misappropriated assets from Decedent through undue influence. Welfare and Institutions Code

10   section 15610.70 defines undue influence as excessive persuasion that causes another person to

11   act or refrain from acting by overcoming that person's free will and results in inequity. In

12   determining whether a result was produced by undue influence, all of the following shall be

13   considered: (1) the vulnerability of the victim, (2) the influencer's apparent authority, (3) the

14   actions or tactics used by the influencer, and (4) the equity of the result. (Welfare & Institutions

15   Code § 15670(a)(1)-(4).)

16       49.    At the time that Anton and Anna began living with and "caring for" Decedent,

17   Decedent was highly vulnerable and suffering through the throes of serious, debilitating mental

18   illness. In addition to repeatedly being hospitalized for episodes relating to his mania and

19   depression, or poor mental health generally, Decedent had lost his driver's license and his

20   medical practice due to his disability. Decedent was divorced, and his mother and sister were

21   unable to care for him on a daily basis, as they reside in Florida. Anton and Anna capitalized on

22   Decedent's weaknesses and worked their way into Decedent's life to make Decedent dependent

23   on them.

24       50.    Welfare and Institutions Code section 15670 provides that evidence of apparent

25   authority may include, but is not limited to, status as a fiduciary or care provider. Accordingly,

26   both Anton and Anna held apparent authority over Decedent as a matter of law, and Anton, who

27   obtained Decedent's purported POAs, and Anna owed a fiduciary duty to Decedent.

28       51.    Plaintiffs are informed and believe that Anton and Anna established a confidential

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

13

**VERIFIED COMPLAINT**

relationship with Decedent by utilizing feigned affection for and friendship with Decedent, who was desperately alone, in order to cultivate a trusting relationship with Decedent. Plaintiffs are further informed and believe that Anton and Anna utilized secrecy when arranging for the transfers of funds from Decedent, and that Decedent was unaware that Anton and Anna were misappropriating his assets, believing that Anton and Anna were assisting him with the management of his finances.

52.     The result of Anton's and Anna's undue influence was clearly inequitable. Their undue influence deprived Decedent and his Estate of at least $3,147,887.89 and other property in contravention of California law and for no consideration.

**D.     Remedies.**

53.     Pursuant to Probate Code section 850, Plaintiffs request an order confirming that all property wrongfully taken by the Defendants is an asset of the Estate and requiring Defendants to transfer all converted assets, and all the proceeds therefrom, to the Estate.

54.     Pursuant to Probate Code section 859, the Court should find that Defendants are liable for twice the value of the property taken from Decedent and the Estate, together with Plaintiffs' attorneys' fees and costs.

55.     Pursuant to Civil Code section 3294, because Defendants committed the wrongful acts willfully and maliciously, Plaintiffs also seek punitive and exemplary damages against them.

56.     Pursuant to Probate Code section 21380(b), the purported gifts to Defendants are presumptively invalid. If Defendants are unable to rebut the presumption by proving, by clear and convincing evidence, that the donative transfers were not the product of fraud or undue influence, then they "shall" bear all costs of this proceeding, including reasonable attorney's fees. (Probate Code § 21380(d).)

57.     Pursuant to Probate Code section 4231.5, the Court should find that Anton has breached his duty as purported attorney-in-fact to Decedent by virtue of the gifts made from Decedent's personal property, and that Defendants have, in bad faith and wrongfully, taken, concealed, or disposed of Decedent's property under the POAs, and as such are liable for twice the value of the property taken, as well as reasonable attorney's fees and costs.

58.     To the extent that Anton and Anna claim that any property received by them from Decedent was a gift from Decedent, such gifts were clearly not made when Decedent was of sound mind, as Decedent was suffering from episodes of mania and depression and was not capable of managing his own affairs. Anton, as purported attorney-in-fact for Decedent, was or should have been aware of Decedent's inability to make sound judgments or manage his personal assets. As care custodians for Decedent, Defendants were fully aware of Decedent's disability, and knew or should have known that Decedent was highly susceptible to fraud and undue influence. Indeed, by virtue of being hired to care for Decedent, Defendants were uniquely aware of Decedent's cognitive impairment, his inability to care for himself and his vulnerability.

59.     In addition to the money misappropriated from Decedent's financial accounts, Anton and Anna remain in custody of other items of Decedent's personal property as well as medical equipment and business records from Decedent's former medical practice. As of the filing of this complaint, Anton has failed to return the personal property, medical equipment, and business records that remain in his possession to the detriment of the Estate. Plaintiffs are entitled to an Order declaring that the foregoing property is property of the Estate, and an Order requiring Defendants to immediately transfer such property to Carole, as personal representative of the Estate.

## SECOND CAUSE OF ACTION

### Financial Abuse of Dependent Adult

### [Welfare and Institutions Code § 15610.30]

### By Plaintiffs Against Defendants, Anton, Individually and as Purported

### Attorney-in-Fact, Anna, and DOES 1 through 20

60.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

61.     Pursuant to Welfare and Institutions Code section 15610.30, financial abuse occurs when a person "(1) [t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both"; (2) assists in so doing; or (3) does so by undue influence. Such conduct constitutes abuse when a dependent adult

is deprived of any property right, regardless of whether the property is held by the dependent adult or by a representative, including a representative of the dependent adult's estate or attorney-in-fact. (Welfare & Institutions Code § 15610.30.)

62.     As set forth above, Decedent was a "dependent adult" within the meaning of Welfare and Institutions Code section 15610.23.

63.     As set forth herein, Defendants have wrongfully taken substantial assets from Decedent for a wrongful use, with the intent to defraud Decedent, and by way of undue influence. The conduct of Defendants, and each of them, as described and alleged herein, constitutes fiduciary abuse as defined in Welfare and Institutions Code section 15610.

64.     As a result of Defendants' financial abuse committed against Decedent, Plaintiffs are entitled to an award of reasonable attorney's fees and costs, in addition to compensatory damages, pursuant to Welfare and Institutions Code section 15657.5.

65.     Defendants, and each of them, are guilty of recklessness, oppression, fraud, and malice in the commission of the financial abuse of Decedent as described and alleged in this complaint. As a result, under Welfare and Institutions Code section 15657.5, together with Civil Code section 3294, Defendants are also liable for punitive damages.

### THIRD CAUSE OF ACTION

**Conversion**

**By Plaintiffs Against Defendants, Anton, Individually and as Purported**

**Attorney-in-Fact, Anna, and DOES 1 through 30**

66.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

67.     Plaintiffs are informed and believe that Anton and Anna converted at least $3,147,887.89 in funds as well as other personal property and assets belonging to Decedent for their own personal gain, and that such funds and other property are now unlawfully within the possession of Defendants.

68.     Plaintiffs are informed and believe that such funds and other property were converted by Defendants by unduly influencing Decedent to make such payments or by gaining

access to Decedent's finances and other property to make such transfers. Additionally, Plaintiffs are informed and believe that by unlawfully utilizing the POAs, Anton continued to make transfers from one of Decedent's investment accounts into Decedent's bank accounts after Decedent's death and then unlawfully transferred, and so converted, funds from Decedent's bank accounts to accounts controlled by Anton to utilize Decedent's assets for continued payment of bills for Anton's and Anna's own personal gain.

69.     Defendants are in possession of the converted funds and other property, which properly belong to Carole, as Administrator.

70.     To date, Defendants have failed to return the converted funds and other personal property to Carole.  Defendants continue to hold those converted funds and other property without Carole's consent.

71.     Defendants have wrongfully, maliciously and with the intent to injure Decedent or the Estate, withheld and failed to deliver the converted funds and other property to Carole. Defendants acted with wrongful intent to injure and oppress Decedent and the Estate by the actions and omissions detailed above. Defendants' actions towards Decedent and the Estate are oppressive and malicious. Under Penal Code section 496, and Civil Code section 3294, Plaintiffs are entitled to punitive and exemplary damages, and pursuant to Penal Code section 496, Plaintiffs are also entitled to costs of collection and prejudgment interest at the legal rate.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiffs Against Defendants, Anton, Individually and as Purported

### Attorney-in-Fact, Anna, and DOES 1 through 40

72.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

73.     The Estate has a direct interest in the funds that would have remained in Decedent's accounts but for Defendants' wrongful actions. Had the amounts been available in Decedent's accounts, such sums could have been invested and may have provided additional benefits to the Estate.

**VERIFIED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

74.     Instead, Defendants have been unjustly enriched as a result of their failure to release the converted funds to Carole. Plaintiffs owe no performance to Defendants that would excuse their failure to release the converted funds.

75.     Plaintiffs are entitled to recover a sum equal to the reasonable value of the benefits and advantages that were conferred upon Defendants, plus costs and interest at the legal rate.

## FIFTH CAUSE OF ACTION

### Accounting (by Purported Attorney-in-Fact)

### By Plaintiffs against Defendants, Anton, as

### Purported Attorney-in-Fact, and DOES 1 through 50

76.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

77.     Pursuant to Probate Code section 4236(b)(4), Plaintiffs are entitled to an accounting of all transactions entered into by Anton on behalf of Decedent, pursuant to any and all purported powers of attorney. Plaintiffs have never been given an accounting for the period in which Anton was acting as purported attorney-in-fact. Without a formal accounting, Plaintiffs are unaware of the full extent of the transactions conducted by Anton on behalf of Decedent with respect to any assets belonging to Decedent.

78.     Plaintiffs therefore request that the Court compel Anton to file an accounting, detailing all transactions entered into by Anton on behalf of Decedent from September 9, 2017, and continuing to the present.

79.     An accounting as of Decedent's date of death will not be sufficient in this case, because in the days and months following Decedent's death, several significant sums were transferred from accounts belonging to Decedent and on which Anton was the purported attorney-in-fact, into accounts which are believed to be controlled by Anton or Anna individually. Therefore, it is necessary that the Court also require Anton to account for these transactions.

///

///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

18

**VERIFIED COMPLAINT**

### SIXTH CAUSE OF ACTION

#### Breach of Contract

#### By Plaintiffs Against Defendants, Anton, Individually and as Purported

#### Attorney-in-Fact, Anna, and DOES 1 through 60

80.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

81.     In or around July and August 2017, Anton and Anna, on the one hand, and Decedent and Pat, on the other hand, entered into an agreement pursuant to which Anton and Anna were to assist Decedent with his medical, health, social and financial needs, including paying bills, providing companionship, shopping, and other tasks Decedent could no longer manage by himself due to his poor mental health.

82.     Anton and Anna defaulted under the terms of the agreement by failing to assist Decedent with his medical, health, social and financial needs, by among other things, misappropriating Decedent's funds and other property to which Anton and Anna had access to pursuant to their agreement with Decedent and Pat.

83.     Decedent and Pat have duly performed all the conditions precedent on their part required to be performed under the terms of the agreement, except for those promises, covenants and conditions excused by the acts or omissions of Defendants, and each of them.

84.     As a result of Defendants' breach of the agreement, Plaintiff and Pat have suffered damages in an amount to be proven at trial, but which is no less than $3,147,887.89.

### SEVENTH CAUSE OF ACTION

#### Recovery of Personal Property

#### By Plaintiffs Against Defendants, Anton, Individually and as Purported

#### Attorney-in-Fact, Anna, and DOES 1 through 70

85.     Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

86.     Plaintiffs are informed and believe that the Misappropriated Assets are now in the possession of Defendants Anton, individually and as purported attorney-in-fact, Anna and DOES

**VERIFIED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

61 through 70 ("Possession Defendants"). Plaintiffs hereby demand of the Possession Defendants that they deliver up possession of the Misappropriated Assets to Carole as she is entitled to immediate possession of those assets.

87. Plaintiffs are informed and believe that the fair market value of the Misappropriated Assets is unknown, in part, because owing to the actions of Possession Defendants it is unclear what assets Possession Defendants have misappropriated. At such time as Plaintiffs have determined the value of the Misappropriated Assets, Plaintiffs will amend this Complaint, or the value of the Misappropriated Assets will be determined at time of trial or entry of judgment according to proof.

88. Plaintiffs are informed and believe that the Misappropriated Assets have not been taken for a tax assessment or fine pursuant to a statute or seized under an execution against the property of Plaintiffs.

89. Plaintiffs are informed and believe that the Misappropriated Assets are in immediate danger of destruction, serious harm, concealment, transfer, or removal from their existing location(s).

### EIGHTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**By Plaintiffs Against Defendants, Anton, Individually and as**

**Purported Attorney-in-Fact, Anna, and DOES 1 through 80**

90. Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

91. As caretakers of Decedent and his assets, and as to Anton, as Decedent's purported attorney-in-fact, Defendants are responsible for acting with the strictest of good faith and cannot seek to obtain an advantage over Decedent by the slightest misconduct, misrepresentation, or concealment.

92. Plaintiffs are informed and believe, and based thereon allege, that Defendants violated their duties, by and among other things, converting and concealing the Misappropriated Assets, and by misappropriating funds from Decedent's accounts and using them for their own

1    personal purposes and expenses.

2         93.    As a direct and proximate result of Defendants' violation of their fiduciary duties,

3    Decedent and the Estate have been damaged in the sum of not less than $3,147,887.89, exclusive

4    of attorneys' fees and interest, but in a total amount to be determined at the time of trial.

5         94.    Plaintiffs also request an accounting in order to determine the exact amount of

6    damages caused by Defendants.

7         95.    Plaintiffs are informed and believe that the actions taken by Defendants were

8    wanton, malicious, oppressive, and undertaken with the intent to defraud, thereby warranting an

9    award of exemplary and punitive damages.

10    **NINTH CAUSE OF ACTION**

11    **Breach of Implied Covenant of Good Faith and Fair Dealing**

12    **By Plaintiffs Against Defendants, Anton, Individually and as Purported**

13    **Attorney-in-Fact, Anna, and DOES 1 through 90**

14         96.    Plaintiffs repeat and incorporate by reference the allegations set forth in the

15    paragraphs above.

16         97.    In or around July and August 2017, Anton and Anna, on the one hand, and

17    Decedent and Pat, on the other hand, entered into an agreement pursuant to which Anton and

18    Anna were to assist Decedent with his medical, health, social and financial needs, including

19    paying bills, providing companionship, shopping, and other tasks Decedent could no longer

20    manage by himself due to his poor mental health.

21         98.    Every contract imposes upon each party a duty of good faith and fair dealing in its

22    performance and its enforcement, particularly in situations where one party is vested with a

23    discretionary power affecting the rights of another, in which cases such power must be exercised

24    in good faith.

25         99.    Anton, Anna, and DOES 1 through 90 breached the implied covenant of good faith

26    and fair dealing in such agreement, by among other things, misappropriating Decedent's funds

27    and other property to which Defendants had access pursuant to their agreement with Decedent

28    and Pat and in breach of their duty arising out of Defendants' respective roles as paid caregivers

1    and Anton's fiduciary obligations pursuant to the purported power of attorney.

2        100.    Decedent and Pat have duly performed all the conditions precedent on their part

3    required to be performed under the terms of the agreement, except for those promises, covenants

4    and conditions excused by the acts or omissions of Defendants, and each of them.

5        101.    All conditions required for Defendants' performance have occurred or have been

6    excused.

7        102.    Defendants unfairly interfered with Decedent and Pat's right to receive the benefits

8    of the agreement.

9        103.    Decedent and Pat were harmed by Defendants' conduct in an amount according to

10   proof at time of trial or entry of judgment.

11   **TENTH CAUSE OF ACTION**

12   **Declaratory Relief**

13   **By Plaintiffs against Defendants, Anton, as**

14   **Purported Attorney-in-Fact, and DOES 1 through 100**

15       104.    Plaintiffs repeat and incorporate by reference the allegations set forth in the

16   paragraphs above.

17       105.    An actual controversy has arisen and now exists between Plaintiffs and Defendants

18   concerning the validity of the September 9 POA and the September 12 POA, attached hereto as

19   **Exhibits "B"** and **"C"**, respectively.

20       106.    Plaintiffs desire a judicial determination and declaration that the September 9 POA

21   and the September 12 POA are void *ab initio*, cancelled, and have no legal force or effect,

22   because the Decedent lacked the requisite mental capacity to execute said documents and because

23   the Decedent's signature on said documents was procured by undue influence, fraud, and

24   financial abuse of a dependent adult.

25

26

27

28

22
**VERIFIED COMPLAINT**

### ELEVENTH CAUSE OF ACTION

**Cancellation of Instruments**

**By Plaintiffs against Defendants, Anton, as**

**Purported Attorney-in-Fact, and DOES 101 through 110**

107.   Plaintiffs repeat and incorporate by reference the allegations set forth in the paragraphs above.

108.   Civil Code section 3412 provides as follows: "a written instrument, in respect to which there is a reasonable apprehension that if left outstanding may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

109.   Plaintiffs allege that the September 9 POA and the September 12 POA are void *ab initio* or voidable because the Decedent lacked the requisite mental capacity to execute said documents and because the Decedent's signature on said documents was procured by undue influence, fraud, and financial abuse of a dependent adult.

110.   Plaintiffs are informed, believe, and based thereon allege that if left outstanding, the September 9 POA and the September 12 POA may cause serious injury to Plaintiffs.

111.   As such, Plaintiffs request a declaration that the September 9 POA and the September 12 POA are void and that Defendants are to deliver the September 9 POA and the September 12 POA immediately to the clerk of the Court for cancellation.

**WHEREFORE, Plaintiffs pray for judgment as follows:**

**AS TO THE FIRST, SECOND, AND THIRD CAUSES OF ACTION**

1.   Compensatory damages in an amount to be proven at trial;

**AS TO THE FIRST AND SECOND CAUSES OF ACTION**

2.   Requiring Defendants to return to the Estate all assets acquired by means of any act or practice declared by this Court to be unlawful, fraudulent, or otherwise improper, in an amount not less than $3,147,887.89;

**AS TO THE FIRST, SECOND, THIRD, FOURTH**

**AND SIXTH CAUSES OF ACTION**

3.    For prejudgment interest on all converted sums at the legal rate of ten percent (10%) per year from the date of conversion or taking;

**AS TO THE FIRST CAUSE OF ACTION**

4.    For judgment finding Defendants, and each of them, liable for twice the value of the assets taken from Decedent by means of any act or practice declared by this Court to be unlawful, fraudulent, or otherwise improper;

**AS TO THE FIRST AND SECOND CAUSES OF ACTION**

5.    For punitive and exemplary damages, in an amount to be proven at trial;

6.    For Plaintiffs' attorneys' fees and costs, as allowed by law;

**AS TO THE THIRD CAUSE OF ACTION**

7.    For statutory damages, including the value of the Misappropriated Assets and for prejudgment interest on the value of the converted funds from the date of conversion;

8.    For punitive and exemplary damages pursuant to Penal Code section 496 and Civil Code section 3294 for three times the amount of actual damages sustained by Plaintiffs;

9.    For costs of collection and prejudgment interest at the legal rate pursuant to Penal Code section 496;

**AS TO THE FOURTH CAUSE OF ACTION**

10.    For restitution for unjust enrichment, in an amount to be proven at trial;

**AS TO THE FIFTH CAUSE OF ACTION**

11.    Compelling Anton to provide an accounting detailing his acts as purported attorney-in-fact from September 9, 2017, through the present;

**AS TO THE SIXTH CAUSE OF ACTION**

12.    For compensatory damages in the amount no less than $3,147,887.89, according to proof at time of trial or entry of judgment;

**AS TO THE SEVENTH CAUSE OF ACTION**

13.    For judgment for possession of the Misappropriated Assets by Carole, or, that the

**VERIFIED COMPLAINT**

BUCHALTER
A Professional Corporation
Los Angeles

Court determine that the Possession Defendants, and each of them, are personally liable for payment of the value of the Misappropriated Assets and for an order that the Possession Defendants pay that amount to Plaintiffs;

### AS TO THE EIGHTH CAUSE OF ACTION

14.    For damages in an amount in excess of $3,147,887.89, as alleged above, the nature and amount of which is to be determined upon proof at time of trial, together with interest thereon at the legal rate;

15.    For an accounting;

16.    For punitive and exemplary damages;

### AS TO THE NINTH CAUSE OF ACTION

17.    For compensatory damages in the amount no less than $3,147,887.89, according to proof at time of trial or entry of judgment;

18.    For punitive and exemplary damages;

### AS TO THE TENTH CAUSE OF ACTION

19.    For a declaration that the September 9 POA and the September 12 POA are void *ab initio*, cancelled, and have no legal force or effect;

### AS TO THE ELEVENTH CAUSE OF ACTION

20.    That the September 9 POA and the September 12 POA be declared void;

21.    That Defendants deliver the September 9 POA and the September 12 POA immediately to the clerk of the Court for cancellation; and

///
///
///
///
///
///
///
///

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

25

**VERIFIED COMPLAINT**

**AS TO ALL CAUSES OF ACTION**

22.    For such other relief the Court deems just and proper.

DATED:  October 3₀, 2018

BUCHALTER
A Professional Corporation

By: _____
MARK T. CRAMER
DAVID E. MARK
Attorneys for Plaintiff PATSY ANN
SAWUSCH, beneficiary of the Estate of
Mark Sawusch

DATED:  October 29, 2018

KEYSTONE LAW GROUP, P.C.

By: _____
SHAWN S. KERENDIAN
Attorneys for Plaintiff CAROLE SAWUSCH,
Administrator of the Estate of Mark Sawusch

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

26

**VERIFIED COMPLAINT**

# EXHIBIT A

DE-150

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, state bar number, and address):* <br> Roee Kaufman, SBN 293609 <br> KEYSTONE LAW GROUP, P.C. <br> 11300 West Olympic Blvd., Suite 910 <br> Los Angeles, CA 90064 | **TELEPHONE AND FAX NOS.:** <br> 310-444-9060 <br> 310-444-9092    **FOR COURT USE ONLY** |

**ATTORNEY FOR** *(Name):* Petitioner, Carole Sawusch

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk

**FILED**
Superior Court of California
County of Los Angeles

SEP 17 2018

Sherri R. Carter, Executive Officer/Clerk
By _Tonya Quinn_, Deputy
Tonya Quinn

**ESTATE OF** *(Name):*

**MARK SAWUSCH**

DECEDENT

CASE NUMBER: 18STPB05726

| **LETTERS** | |
|---|---|
| ☐ TESTAMENTARY | ☐ OF ADMINISTRATION |
| ☑ OF ADMINISTRATION WITH WILL ANNEXED | ☐ SPECIAL ADMINISTRATION |

| **LETTERS** | **AFFIRMATION** |
|---|---|
| 1. ☑ The last will of the decedent named above having been proved, the court appoints *(name):* <br> Carole Sawusch <br> a. ☐ executor. <br> b. ☑ administrator with will annexed. <br><br> 2. ☐ The court appoints *(name):* <br><br> a. ☐ administrator of the decedent's estate. <br> b. ☐ special administrator of decedent's estate <br> (1) ☐ with the special powers specified in the *Order for Probate.* <br> (2) ☐ with the powers of a general administrator. <br> (3) ☐ letters will expire on *(date):* <br><br> 3. ☑ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☐ with full authority <br> ☑ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property). <br><br> 4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order. | 1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)). <br><br> 2. ☑ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law. <br><br> 3. ☐ INSTITUTIONAL FIDUCIARY *(name):* <br><br> I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer. *(Name and title):* <br><br> 4. Executed on *(date):* June 15, 2018 <br> at *(place):*   Florida. <br>   California. <br><br> ▶ _Carole Sawusch_ <br> (SIGNATURE) |

**WITNESS,** clerk of the court, with seal of the court affixed.

(SEAL)

Date: SEP 17 2018

Clerk, by _____ SHERRI R. CARTER
       (DEPUTY)
Tonya Quinn

**CERTIFICATION**

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL)

Date: SEP 17 2018

Clerk, by _____ SHERRI R. CARTER
       (DEPUTY)
Tonya Quinn

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Form [1/1/2000]

**LETTERS**
(Probate)

Probate Code, §§ 1001, 8403, 8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

# EXHIBIT B

## CALIFORNIA DURABLE POWER OF ATTORNEY

### (California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Mark Sawusch of 26228 Pacific Coast Highway, Malibu, California, 90265-5420, appoint Anthony Flores of 2401 Alluvial Avenue, Suite 71, Clovis, California, 93611, as my agent(s) (attorney-in-fact(s)) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS. TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING. TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

### INITIAL

_____ MS (A) Real property transactions.
_____ MS (B) Tangible personal property transactions.
_____ (C) Stock and bond transactions.
_____ (D) Commodity and option transactions.
_____ MS (E) Banking and other financial institution transactions.
_____ MS (F) Business operating transactions.
_____ MS (G) Insurance and annuity transactions.
_____ (H) Estate, trust, and other beneficiary transactions.
_____ MS (I) Claims and litigation.
_____ MS (J) Personal and family maintenance.
_____ (K) Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.
_____ (L) Retirement plan transactions.
_____ (M) Tax matters.
_____ (N) ALL OF THE POWERS LISTED ABOVE.

YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney.

Page 1
AF00292

61

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

**This power of attorney shall not be affected by subsequent incapacity of the principal.**

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

**I agree that any third party who receives a copy of this document may act under it.**

**Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.**

Signed this 9th day of September, 2007.

_____
*Signature of Principal*

REDACTED
_____
*Principal's Social Security Number*

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California** )
                      ) ss
**County of** _Los Angeles_ )

**On** _September 9th_, 20_17_, **before me,** _Clarissa Chambers_
a Notary **Public in and** for the State of California, personally appeared
_____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
**instrument.**

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the
foregoing paragraph is true and correct.

**WITNESS** my hand and official seal.

**Signature** _____

**My commission expires** _____

CLARISSA CHAMBERS
COMM. #2083983
Notary Public · California
Los Angeles County
My Comm. Expires Nov. 25, 2018

## NOTICE TO PERSON EXECUTING DURABLE POWER OF ATTORNEY
### (California Probate Code Section 4128(a))

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing.

This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf. This document does not give your agent the power to accept or receive any of your property, in trust or otherwise, as a gift, unless you specifically authorize the agent to accept or receive a gift.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney.

The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property.

You can amend or change this durable power of attorney only by executing a new durable power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this durable power of attorney at any time, so long as you are competent.

This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this durable power of attorney carefully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

_____MS_____
*Initials of Principal*

NOTICE TO PERSON ACCEPTING THE APPOINTMENT AS ATTORNEY-IN-FACT

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

The legal duty to act solely in the interest of the principal and to avoid conflicts

The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under Penal Code Section 368. In addition to criminal prosecution, you may also be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Date 9/8/17

_Signature of Agent_

Anthony David Flores

_Print-Name **of Agent**_

AF00296

# EXHIBIT C

## CALIFORNIA DURABLE POWER OF ATTORNEY

### (California Probate Code Section 4401)

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Mark Sawusch of 30228 Pacific Coast Highway, Malibu, California, 90265-5420, appoint Anthony Flores of 2091 Alluvial Avenue, Suite 71, Clovis, California, 93611, as my agent(s) (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS. TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING. TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

### INITIAL

_MS_ (A) Real property transactions.
_MS_ (B) Tangible personal property transactions.
_MS_ (C) Stock and bond transactions.
_MS_ (D) Commodity and option transactions.
_MS_ (E) Banking and other financial institution transactions.
_MS_ (F) Business operating transactions.
_MS_ (G) Insurance and annuity transactions.
_____ (H) Estate, trust, and other beneficiary transactions.
_MS_ (I) Claims and litigation.
_MS_ (J) Personal and family maintenance.
_MS_ (K) Benefits from social security, medicare, medicaid, or other governmental programs, or civil or military service.
_____ (L) Retirement plan transactions.
_MS_ (M) Tax matters.
_____ (N) ALL OF THE POWERS LISTED ABOVE.

### YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

### SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The Principal SHALL NOT grant any additional powers or instructions to the Agent other than the powers listed under this power of attorney.

UNLESS YOU DIRECT OTHERWISE ABOVE, THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

**This power of attorney shall not be affected by subsequent incapacity of the principal.**

STRIKE THE PRECEDING SENTENCE IF YOU DO NOT WANT THIS POWER OF ATTORNEY TO CONTINUE IF YOU BECOME INCAPACITATED.

**I agree that any third party who receives a copy of this document may act under it.**

Revocation of the power of attorney is not effective as to a third party until the third party has actual knowledge of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _12th_ day of _September_ , 20 _17_.

*Signature of Principal*

REDACTED

*Principal's Social Security Number*

BY ACCEPTING OR ACTING UNDER **THE APPOINTMENT, THE AGENT ASSUMES THE** FIDUCIARY AND OTHER LEGAL **RESPONSIBILITIES OF AN AGENT.**

# CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which the certificate is attached, and not the truthfulness, accuracy, or validity of that document.

**State of California )**
  ) ss
**County of** LOS Angeles )

**On** September 12th, 20 17 , before me, Clarissa Chambers
**a Notary Public in and for the State of California, personally appeared**
Mark Sawusch
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the **instrument.**

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

**WITNESS** my hand and official seal.

**Signature** _____

**My commission expires** September 29, 2018

CLARISSA CHAMBERS
COMM. #2083952
Notary Public · California
Los Angeles County
My Comm. Expires Sep. 29, 2018

CLARISSA CHAMBERS
COMM. #2083952
Notary Public · California
Los Angeles County
My Comm. Expires Sep. 29, 2018    NR01

NOTICE TO PERSON EXECUTING DURABLE POWER OF ATTORNEY
(California Probate Code Section 4128(a))

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing.

This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf. This document does not give your agent the power to accept or receive any of your property, in trust or otherwise, as a gift, unless you specifically authorize the agent to accept or receive a gift.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney.

The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property.

You can amend or change this durable power of attorney only by executing a new durable power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this durable power of attorney at any time, so long as you are competent.

This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this durable power of attorney carefully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

*M S*

**Initials of Principal**

## NOTICE TO PERSON ACCEPTING THE APPOINTMENT AS ATTORNEY-IN-FACT

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

The legal duty to act solely in the interest of the principal and to avoid conflicts

The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you, the Agent, Anthony David Flores.

You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under Penal Code Section 368. In addition to criminal prosecution, you may also be sued in civil court.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Date: 9/13/2017

_____

*Signature of Agent*

Anthony David Flores

*Print Name of Agent*

Date: 9-13-17

_____

*Signature of Principal*

Mark Sawusch

**Print Name of Principal**

REDACTED

***Social Security Number of Principal***

REDACTED

**Date Of Birth of Principal**

California Durable Power of Attorney - Mark Raymond Sawusch - Page 5 of 5    **AF00291**

71

**VERIFICATION**

I, CAROLE SAWUSCH, the undersigned, am a plaintiff named in the foregoing Verified Complaint in my capacity as Administrator of the Estate of Mark Sawusch. I declare that I have read the foregoing Verified Complaint and know its contents and that the same is true of my own knowledge except as to those matters therein stated on information or belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: October 29, 2018

_Carole Sawusch_
CAROLE SAWUSCH

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

27
**VERIFIED COMPLAINT**

72

# EXHIBIT C

1  BUCHALTER
   A Professional Corporation
2  MARK T. CRAMER (SBN: 198952)
   JEFFREY S. WRUBLE (SBN: 94734)
3  DAVID E. MARK (SBN: 247283)
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA 90017-1730
   Telephone: (213) 891-0700
5  Fax: (213) 896-0400
   E-mail: mcramer@buchalter.com
6
   Attorneys for Plaintiff PATSY ANN SAWUSCH,
7  beneficiary of the Estate of Mark Sawusch

8  Shawn S. Kerendian (SBN 251655)
   Roee Kaufman (SBN 293609)
9  Samuel L. Birdsong (SBN 251594)
   KEYSTONE LAW GROUP, P.C.
10 11300 W. Olympic Blvd., Ste. 910
   Los Angeles, California 90064
11 Tel:   310.444.9060
   Fax:   310.444.9092
12
13 Attorneys for Plaintiff CAROLE SAWUSCH,
   Administrator of the Estate of Mark Sawusch

14

15          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16          **COUNTY OF LOS ANGELES – WEST JUDICIAL DISTRICT**

17 CAROLE SAWUSCH, Administrator of the        CASE NO. 18SMCV00134
   Estate of Mark Sawusch, and PATSY ANN       Assigned to Honorable Nancy L. Newman
18 SAWUSCH, beneficiary of the Estate of Mark  Department P
   Sawusch
19                                             **[PROPOSED] ORDER APPOINTING**
              Plaintiff,                       **RECEIVER *EX PARTE*; TEMPORARY**
20                                             **RESTRAINING ORDER; ORDER TO**
        vs.                                    **SHOW CAUSE WHY RECEIVER**
21                                             **SHOULD NOT BE CONFIRMED**
   ANTHONY DAVID FLORES a.k.a., ANTON          ***PENDENTE LITE* AND WHY**
22 DAVID, individually and as purported Attorney- **PRELIMINARY INJUNCTION SHOULD**
   in-Fact for Decedent, Mark Sawusch; ANNA    **NOT BE GRANTED**
23 MOORE, an individual; and DOES 1-110,
   inclusive,                                  **Ex Parte Hearing**
24                                             Date:      November 9, 2018
              Defendants.                      Time:      8:30 a.m
25                                             Dept.:     P
26
27                                             **Order to Show Cause Hearing**
                                               Date:
28                                             Time:
                                               Dept.:

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 0 9 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By_____ Deputy
       L. Pastel

The Court, having considered the *ex parte* application of Plaintiffs Carole Sawusch ("Carole") and Patsy Ann Sawusch ("Pat," and together with Carole, the "Plaintiffs"), for an Order Appointing Receiver, Temporary Restraining Order, and OSC Why Receiver Should Not Be Confirmed, or, Alternatively, for Temporary Restraining Order, and an OSC Why Receiver Should Not Be Appointed and Preliminary Injunction Should Not Be Issued, and, an Order Shortening Time for Hearing on Receivership Application, etc., the omnibus memorandum of points and authorities and declarations filed in support thereof, the pleadings in this action, and good cause appearing:

### **ORDER APPOINTING RECEIVER**

**IT IS HEREBY ORDERED** that pending the hearing of this Order to Show Cause, Theodore Lanes (the "Receiver") shall be appointed as receiver to take possession, custody, and control of Decedent's funds in the amount of $3,128,856.46 ("Decedent's Funds") as well as Decedent's personal and business records as well as multiple valuable items of Decedent's personal property in the possession of the Defendants Anthony David Flores a.k.a. Anton David and Anna Moore (collectively, "Defendants"), and all assets, proceeds, interest and accessions to any and all of the foregoing, together with all books, statements and records related thereto (collectively, the "Receivership Property") and to maintain and conserve the Receivership Property pending further order of this Court. The powers of the Receiver shall be all the usual and customary powers of a receiver to take control of the Receivership Property, including the duties and powers enumerated below.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

IT IS FURTHER ORDERED that:

1. <u>Plaintiff's *Ex Parte* Bond</u>: Plaintiff shall promptly file an applicant's bond under Code of Civil Procedure section 566(b) in the amount of $ _10,000_ ;

2. <u>Receiver's Oath and Bond</u>: The Receiver shall, within three (3) days of this appointment, execute a Receiver's Oath and shall also post a bond from an insurer in the sum of $_100,000_, conditioned on the faithful performance of the Receiver's duties defined herein. The Receiver's Oath and Bond may be filed by facsimile transmission and this Order shall become effective upon the Court's receipt of same, provided, however, that the Receiver replace the facsimiles with originals within seven (7) days of filing.

3. <u>Receiver's Fees</u>: The Receiver shall be entitled to submit monthly detailed invoices for reimbursement of his receivership fees and expenses, as set forth in this paragraph, with such invoices to be reviewed and approved by Plaintiffs before payment hereunder is made. The receivership fee shall be a rate of between $85.00 and $325.00 per hour for the Receiver and his staff. In addition, the Receiver shall be entitled to receive reasonable reimbursement for: (i) reasonable out-of-pocket expenses incurred on behalf of the receivership estate, including, but not limited to, the receiver's bond, court filings, mailing and shipping expenses, and other outside services; and (ii) the Receiver's standard costs for travel time, mileage, faxes, copies, and similar Receiver-provided benefits.

4. <u>Monthly Statements</u>: The Receiver shall prepare and serve monthly reports pursuant to California Rule of Court 3.1182(a). Upon the service of each statement, the Receiver may disburse from estate funds, if any, the amount of each statement. Notwithstanding the periodic payment of fees and expenses, all fees and expenses shall be submitted to the Court for its approval and confirmation, in the form of either a properly noticed interim request for fees, a stipulation of all parties, or in the Receiver's Final Account and Report.

5. <u>Receiver's Duties and Powers</u>: The Receiver is hereby given the powers and authority usually held by receivers and reasonably necessary to accomplish the purpose of this Receivership, including, without limitation, the following specific powers:

(a)   The Receiver shall take immediate and exclusive possession, custody, and control of the Receivership Property, and all interest therefrom, bank and brokerage accounts, deposits, equities, profits, up to the amount of the Decedent's Funds, and all books and records related thereto.  The Receiver shall preserve, protect and maintain the Receivership Property, and may incur any expenses necessary for this purpose.  All such expenses shall be paid from funds of the receivership estate.

(b)   Identify all revenue sources, be they interest, profits, dividends, or otherwise described, and make demand upon all financial institutions, brokerages, obligors or any other persons or entities, to make remittances of future sums and past due balances solely to the Receiver;

(c)   Maintain, protect, and collect the Receivership Property;

(d)   Take possession of all bank, brokerage and other accounts of the Defendants relating to the Receivership Property up to the amount of the Decedent's Funds; open, transfer and change all bank and trade accounts relating to the Receivership Property, so that all such accounts are in the name of the Receiver; and make disbursements in payment of expenses incurred by the Receiver in accordance with this Order;

(e)   Hire, on a contract basis, professionals, accountants, employees, and other personnel necessary to recover, control and preserve the Receivership Property, provided that the Receiver obtains the written approval of the Plaintiffs prior to taking any action authorized by this paragraph and provided that the amount of compensation paid to such professionals, accountants, employees, and other personnel is comparable to that charged by similar persons/companies for similar services;

(f)   Hire, employ, pay, and terminate servants, agents, employees, clerks and accountants; and contract for services, all at ordinary and usual rates and prices using funds that shall come into the Receiver's possession from the receivership estate; and collect or compromise debts of the receivership estate;

(g)     Execute and perform all acts and prepare all documents, in the name of the Defendants, the receivership estate or in the Receiver's own name, which are necessary or incidental to recovering, preserving, protecting and controlling the Receivership Property;

(h)     Pay only current operating expenses associated with the Receivership Property incurred by the Receiver subsequent to his appointment, including without limitation, the Receiver's fees and administrative expenses, with the limitation that the Receiver may not use funds of the receivership estate to pay any bills for goods or services contracted for or provided in connection with the Receivership Property, prior to the date of the Order unless such payment is reasonably necessary or beneficial to enable the Receiver to continue to preserve, protect, and control the Receivership Property as determined by the Receiver in his sole discretion;

(i)     Borrow from either or both of the Plaintiffs, funds required to continue to recover, preserve, protect, and control the Receivership Property when current Receivership Property or income is insufficient to meet expenses, upon such terms as deemed reasonable by the Receiver.  Plaintiffs shall be entitled to earn interest on such advances at the legal rate of interest. Nothing in this Order shall obligate Plaintiffs to provide such funds.  Plaintiffs shall be entitled to the issuance of a Receiver's Certificate, in accordance with Section 16 of this order;

(j)     Collect all interest, profits and income, which now or hereafter may be due from the Receivership Property, including such interest, profits and income presently held in any bank, brokerage or other accounts in which the Receivership Property may be held;

(k)     Institute and prosecute all suits that the Receiver, upon obtaining permission of the Court, may reasonably believe to be necessary in connection with the recovery, preservation, protection, or control of the Receivership Property, and defend all suits as may be instituted against the Receivership Property or the Receiver;

(l)     Open and review mail directed to Defendants and their representatives pertaining to the Receivership Property, and to instruct that all such mail be delivered to the Receiver directly;

(m)     Receive and endorse checks pertaining to the Receivership Estate either in the Receiver's name or in the name of the Defendants; and

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

5

**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

(n)    Issue subpoenas, conduct and participate in discovery, take depositions, pursue contempt actions, and otherwise pursue all remedies available by law to ensure compliance with the Receiver's authority granted herein.

6.    <u>Income Tax</u>: The Receiver shall not be obligated to file any federal or state income tax, returns, schedules or other forms, which continue to be an obligation of the Defendants. At the Receiver's discretion, the Receiver may file any federal or state income tax, returns, schedules or other forms if doing so results in a benefit to the receivership estate.

7.    <u>Overhead Expenses of the Receiver</u>: All fees and expenses incurred by the Receiver, which pertain solely to the Receiver's general office administration and/or overhead, including, but not limited to, office supplies, employee wages, taxes and benefits and other charges shall not be an expense of the receivership estate unless incurred directly and solely for the benefit of the receivership estate.

8.    <u>Inventory</u>: Within thirty (30) days after entry of this Order, the Receiver shall file an inventory of all of the Receivership Property taken into possession pursuant to this Order.

9.    <u>Protection of the Receivership Property</u>: The Receiver shall recover, control and preserve the Receivership Property including earning and collecting interest. The Receiver may employ such agents, independent contractors, and employees to assist the Receiver in recovering, controlling and preserving the Receivership Property including, the engagement of a company in which the Receiver is a principal, provided the amount of compensation paid to any such agent or firm is comparable to that charged by similar entities for similar services.

10.    <u>Police Assistance</u>: The Receiver, as agent of the Court, shall be entitled to the assistance of law enforcement officials, when levying this Order, taking possession of the Receivership Property, or at any other time during the term of the Receivership, if in the opinion of the Receiver, such assistance is necessary to preserve the peace and protect the Receivership Property, without further order from this Court.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

6

**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

11.   <u>Bank Accounts & Credit Cards</u>:

(a)   The Receiver shall have the power to take possession of, issue demands for the freezing and turnover of funds, and receive from all depositories, banks, financial institutions, brokerages and otherwise, any money, securities or other assets on deposit in such institutions associated with, belonging to, arising from or holding any funds related to the Receivership Property, whether such funds be in accounts titled in the name of the Defendants or not, and the Receiver may indemnify the institution upon whom such demand is made, and is empowered to open or close any such accounts. The Receiver shall deposit monies and funds collected and received in connection with the receivership estate at federally-insured banking institutions located within the State of California which are not parties to this action.

(b)   Monies coming into the possession of the Receiver and not expended for any purposes herein authorized shall be held by the Receiver pending further order of this Court.

(c)   Upon presentation of a copy of this Order, all depositories, banks, financial institutions, brokerages and otherwise, shall provide copies of any requested records regarding any such accounts to the Receiver. The Receiver may add his agents or employees as additional signatories to any bank accounts, money market accounts, deposit accounts, brokerage accounts, or CDs or any other financial instruments or accounts controlled by the Receiver.

12.   <u>Delivery of the Receivership Property and all Interest</u>: Upon the Defendants' notice of this Order, the Defendants shall immediately, but in no event more than 48 hours, deliver to the Receiver the Receivership Property in the Defendants' possession, custody or control, together with all interest, profits and income generated from the Receivership Property, irrespective of when the interest, profits and income was generated. The Receiver may demand, collect, and receive all interest, profits and income of the Receivership Property, or any part, owed, unpaid, and collected or uncollected as of the effective date of this Order, or which hereafter becomes due.

13.   <u>Use of Funds</u>: The Receiver shall pay only those bills that are reasonable and necessary for the protection of the Receivership Property for the period after the entry of this

1  Order until termination of the receivership and shall pay the costs and expenses of the

2  receivership estate.

3       14.   Mail: The Receiver may issue demand upon the U.S. Postal service that it grant

4  exclusive possession and control of mail, including postal boxes as may have been used by

5  Defendants, and may direct that certain mail related to the Receivership Property and its business

6  be re-directed to the Receiver.

7       15.   Entry to Property: The Receiver shall further be entitled to engage a locksmith for

8  the purposes of gaining entry to any property maintained in Decedent's name that is the subject of

9  this receivership and through any security system, in order to obtain any property or documents to

10  which the Receiver is entitled pursuant to this Order.  The Receiver may have locks or security

11  codes changed, or have keys created that will work for the existing locks.

12       16.   Receiver's Certificates: In the event that income from the receivership estate is

13  insufficient to meet normal operating expenses and costs, the Receiver is authorized to borrow

14  money and to issue Receiver's Certificates to secure such indebtedness provided that Plaintiffs, in

15  their sole discretion, will advance such funds.  The Receiver's Certificates shall have priority over

16  all other general claims against the receivership estate and collectively constitute a lien and

17  charge upon all of the assets of the receivership estate securing the Receiver's Certificate shall be

18  prior and superior to all liens, encumbrances and claims against the Receivership Property held by

19  any secured creditors.  After any Receiver's Certificate is issued a copy shall be included in the

20  Receiver's monthly report. The original shall be delivered to the lender. As funds in the

21  receivership estate are deemed by the Receiver to be in excess of necessary reserves, the Receiver

22  may redeem these Certificates.

23       17.   Plaintiffs to Notify Receiver of the Appearances of the Parties: The Plaintiffs are

24  ordered to promptly notify the Receiver of the names, addresses, and telephone numbers of all

25  parties and their counsel who appear in the action, so that the Receiver may give notice to all

26  parties of any matters affecting the receivership estate.

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

18.    Contempt: Upon the failure of the Defendants, their agents, representatives and all persons acting under, in concert with, or for them, to abide by any term or condition of this Order, the Receiver may petition this Court for further action to compel and enforce this Order.

19.    Instructions in the Event of Bankruptcy:

(a)    *Defendant's Duty to Give Notice of Bankruptcy*: In the event that a bankruptcy case is filed by any Defendant during the pendency of this Receivership, Defendant must give notice to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing;

(b)    *Receiver's Duties if Bankruptcy is Filed*: Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

(i)    *Immediately Turn Over the Property if No Relief From Stay or Motion to Dismiss the Bankruptcy will be Sought*:  The Receiver shall immediately contact the Plaintiffs, and determine whether they intend to move in the Bankruptcy Court for an order for both: (a) relief from the automatic stay or dismissal of the bankruptcy case and (b) relief from the Receiver's obligation to turn over the property (11 U.S.C. Section 543).  If the Plaintiffs indicate no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the property (to the trustee in bankruptcy, or if one has not been appointed, then to the Defendants), and otherwise comply with 11 U.S.C. Section 543.

(ii)    *Remain in Possession and Preserve the Property, Pending Resolution of Motion for Relief From Stay and Turnover, or Motion to Dismiss*:  If the Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the property pending the outcome of those motions pursuant to 11 U.S.C. Section 543(a).  The Receiver's authority to preserve the property is limited as follows:  The Receiver may continue to collect income and profits.  The Receiver may make disbursements, but only those which are necessary to preserve and protect the property.  The Receiver shall not execute any long-term

1  contracts.  The Receiver shall do nothing that would effect a material change in the circumstances

2  of the property.

3          (iii)    *The Receiver is Authorized to Retain Legal Counsel to Assist the*

4  *Receiver with the Bankruptcy Proceedings.*

5      20.    <u>Receiver's Final Report and Account</u>: Upon any event terminating the need for a

6  Receiver, the Receiver shall turn over possession, custody, and control of the Receivership

7  Property to the appropriate person or entity without further Court Order.  As soon as is practicable

8  after the Receivership terminates, the Receiver shall file, serve, and set for hearing in this Court

9  his Final Report and Account.  Notice shall be given to all persons from whom the Receiver has

10  received notice of potential claims against the receivership estate.

11      The motion to approve the Final Report and Account, and for discharge of the Receiver,

12  shall contain a summary of the Receivership accounting including enumeration, by major

13  categories, of total revenues and total expenditures, the net amount of any surplus or deficit with

14  supporting facts, a declaration under penalty of perjury of the basis for the termination of the

15  Receivership, and evidence to support an order for the distribution of any surplus, or payment of

16  any deficit, in the receivership estate.

17      The bond of the Receiver shall be canceled upon the Court's discharge of the Receiver.

18      21.    <u>Instructions From the Court</u>: The Receiver and the parties to this case may at any

19  time apply to this Court for further instructions or orders.  The Court may grant any order

20  requested by the Receiver, without further notice of hearing, if no objection is filed with the Court

21  and served on the Receiver, and the parties.

22      22.    <u>General Provisions</u>:

23      (a)    No person or entity shall file suit against the Receiver, or take other action

24  against the Receiver, without an order of this Court permitting the suit or action provided,

25  however, that no prior Court order is required to file a motion in this action to enforce the

26  provisions of this Order or any other order of this Court in this action;

27      (b)    The Receivership Estate and its employees, agents, attorneys and all

28  professionals and management companies retained by the Receiver shall not be held liable for any

10

**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

1  claim, obligation, liability, action, cause of action, cost, expense or debts incurred by Defendants.

2  The Receiver and his or her employees, agents and attorneys shall have no personal liability, and

3  they shall have no claim asserted against them relating to the Receiver's duties under this Order,

4  without prior authority from this Court as stated above. All who are acting, or have acted, on

5  behalf of the Receiver or at the request of the Receiver are protected and privileged with the same

6  protections of this Court as that of the Receiver;

7          (c)    Nothing contained in this Order shall be construed as obligating or

8  permitting the Receiver to advance his or her own funds to pay any costs and expenses of the

9  receivership estate.

10  **TEMPORARY RESTRAINING ORDER**

11  **IT IS FURTHER ORDERED** that Defendants, and each of them, and their respective

12  members, agents, employees, assignees, successors, representatives, and all persons acting under,

13  in concert with, or for them are ordered to:

14       1.    <u>Turn Over Property</u>: Relinquish and turn over possession of the Receivership

15  Property to the Receiver upon the Receiver's appointment becoming effective; and

16       2.    <u>Turn Over Monies, Books, and Records</u>: Turn over to the Receiver and direct all

17  third parties in possession thereof to turn over all monies including, but not limited to any funds

18  in bank accounts, brokerage accounts, or other depository accounts together with all books,

19  records, books of account, financial records, statements and cancelled checks, and provide the

20  Receiver with all passwords needed to access all records and files maintained on any computers

21  on which such information is stored, together with passwords needed to access all records relating

22  to the Receivership Property, wherever located, and in whatever mode maintained.

23      **IT IS FURTHER ORDERED** that Defendants, and each of them, and their respective

24  members, agents, employees, assignees, successors, representatives, and all persons acting under,

25  in concert with, or for them shall not:

26       1.    Directly or indirectly interfere in any manner with the discharge of the Receiver's

27  duties under this Order or the Receiver's control and preservation of the Receivership Property;

28       2.    Conceal, remove, expend, disburse, transfer, assign, sell, convey, devise, pledge,

BUCHALTER
A Professional Corporation
Los Angeles

11

**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

84

1  create a security interest in, encumber, or in any manner whatsoever deal in or dispose of the

2  whole or any part of the Receivership Property;

3       3.    Withhold any Receivership Property, including any monies, books, or records

4  from the Receiver; and

5       4.    Do any act which will, or which will tend to, impair, defeat, divert, prevent, or

6  prejudice the preservation of the Receivership Property.

7      **IT IS FURTHER ORDERED** that except by leave of this Court, all creditors seeking to

8  enforce any claim, right, or interest against Defendants, be barred by this Order from using any

9  "self-help" or doing anything whatsoever to interfere in any way with the Receiver in the conduct

10  of the Receivership Estate.

11       1.    <u>Binding Nature</u>: As to the Temporary Restraining Order granted herein, this Order

12  shall be binding on the parties to this action, their officers, agents, servants, employees, and

13  attorneys, and on those persons in active concert or participation with them who receive actual

14  notice of this Temporary Restraining Order; and

15       2.    <u>Relation of Other Related Actions</u>: In order to promote judicial efficiency, all

16  persons who receive actual or constructive notice of this Order are enjoined in any way from

17  disturbing the receivership estate's assets or from prosecuting any new proceedings (including

18  collection or enforcement proceedings) that involve the Receiver or the Receivership Property

19  (including any proceeding initiated pursuant to the United States Bankruptcy Code) unless such

20  person or persons first obtains the permission of this Court.

21      **IT IS FURTHER ORDERED** that all third parties (including banks, financial

22  institutions and brokerages) in possession of property (including monies) subject to this Order are

23  hereby ordered to turn over such property to the Receiver within five (5) business days of receipt

24  of a copy of this Order.

25      **THE COURT ORDERS PLAINTIFFS** to promptly file a Temporary Restraining Order

26  bond under Code of Civil Procedure section 529 in the amount of $ _10,000_.

27

28

## ORDER TO SHOW CAUSE

**IT IS HEREBY ORDERED** that Defendants appear on _____12/4_____, 2018, at 8:30 a.m., in Department _F_ of the above-captioned Court, located at 1725 Main Street, Santa Monica, California 90401, to show cause, if they have any:

1.    Why a preliminary injunction should not be issued ordering Defendants and their agents not to:

(a)    Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this Order or the Receiver's control and preservation of the Receivership Property;

(b)    Conceal, remove, expend, disburse, transfer, assign, sell, convey, devise, pledge, create a security interest in, encumber, conceal, or in any manner whatsoever deal in or dispose of the whole or any part of the Receivership Property;

(c)    Withhold any Receivership Property, including any monies, books, or records from the Receiver; and

(d)    Do any act which will, or which will tend to, impair, defeat, divert, prevent, or prejudice the preservation of the Receivership Property.

2.    Why the Receiver should not be confirmed *pendente lite* to take possession and control of the Receivership Property, and to maintain and conserve such Receivership Property with the powers and duties enumerated above and in accordance with the terms of this Order and until further Order of this Court.

**IT IS FURTHER ORDERED** that no individual or entity may sue the Receiver without first obtaining permission of this Court.

## SERVICE AND BRIEFING SCHEDULE

The Summons and Complaint, Plaintiff's *ex parte* Application, Omnibus Memorandum of Points and Authorities, this Order and all declarations and supporting papers are to be personally served on Defendants no later than __11/13__, 2018, with proof of service to be filed in Department __P__ no later than __11/14__, 2018.

Any opposition to this Order to Show Cause is to be hand served on Plaintiffs' attorneys of record and filed in Department __P__ no later than 4:30 am. on __11/26__, 2018.

Any reply is to be hand served on Defendants' attorney(s) of record and filed in Department __P__ by no later than __11/29__, 2018.

**IT IS SO ORDERED.**

Dated: ___11/9/2018___

Nancy Newman

_____

Judge of the Los Angeles Superior Court

BUCHALTER
A PROFESSIONAL CORPORATION
Los Angeles

14
**[PROPOSED] ORDER APPOINTING RECEIVER, ETC.**

87

# EXHIBIT D

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases (the "Agreement") is entered into as of the 17th day of July, 2019 by and among (i) CAROLE SAWUSCH, Administrator of the Estate of Mark Sawusch ("Administrator"), and PATSY ANN SAWUSCH, beneficiary of the Estate of Mark Sawusch (collectively, "Estate"), on the one hand, and (ii) ANTHONY DAVID FLORES a.k.a., ANTON DAVID, and a.k.a. ANTON DAVID FLORES, individually ("Flores"); and ANNA MOORE, an individual ("Moore" and together with the Flores, "Defendants"), on the other hand.  Estate and Defendants are sometimes collectively referred to as the "Parties," and each individually as a "Party."

### RECITALS

This Agreement is made with reference to the following facts:

A.    Mark Sawusch ("Decedent") was a board-certified ophthalmologist that passed away on May 27, 2018. In or around November 2016, Decedent sustained severe burns to his hands, which rendered him physically disabled and unable to perform surgery, derailing his medical practice.

B.    Decedent suffered from severe bipolar disorder, which caused him to experience extreme mood swings, with prolonged manic and depressive states characterized by erratic behavior and severe depression.

C.    As a direct and proximate result of Decedent's cognitive impairment owing to his bipolar disorder, Decedent became unable to care for himself or manage his daily activities.

D.    Decedent's manic episodes caused Decedent to be hospitalized involuntarily under Welfare and Institutions Code section 5150 on several occasions throughout 2017.

E.    Flores acted as Decedent's purported attorney-in-fact pursuant two purported powers of attorney, dated September 9, 2017 and September 12, 2017, respectively.

F.    On September 17, 2018, the Petition for Probate of Lost Will and for Letters of Administration and Authorization to Administer under the Independent Administration of Estates Act was approved and Letters of Administration With Will Annexed were issued on September 17, 2018. Administrator has full IAEA powers.

G.    On or about June 20, 2018, Administrator filed her Petition for Probate of Lost Will and for Letters of Administration and Authorization to Administer under the Independent Administration of Estates Act, submitting to probate the California Statutory Will of Mark Raymond Sawusch, dated January 5, 2014 ("Probate Action").

89

H.     On or about October 30, 2018, Estate filed its Complaint for Order Invalidating Purported Gifts to Caretakers Based on Lack of Capacity, Undue Influence, and Fraud, and for an Order Conveying Such Assets to The Estate; Financial Elder Abuse; Conversion; Unjust Enrichment; Accounting By Attorney-In-Fact; Breach Of Contract; Recovery of Personal Property; Breach of Fiduciary Duty; Breach Of The Implied Covenant of Good Faith And Fair Dealing; Declaratory Relief; and Cancellation of Instrument in the Superior Court of the State of California for the County of Los Angeles (Case No. 18SMCV00134) ("Action").

I.     On or about January 16, 2019, Defendants each filed two separate claims in the Probate Action ("Creditors' Claims").

J.     On or about April 5, 2019, Defendants filed their Answer to the Complaint in the Action, denying the material allegations of the Complaint and raising various affirmative defenses.

K.     On or about May 31, 2019, Administrator filed and served rejections of the Creditor's Claims.

L.     On July 17, 2019, Estate and Defendants mediated their dispute before the Honorable James A. Steele (Ret.).

### AGREEMENT

In consideration of the recitals, covenants, and conditions contained in this Agreement, and for valuable consideration, the Parties agree as follows:

1.     The foregoing recitals are part of this Agreement and incorporated herein as though set forth in full.

2.     **EXECUTORY TERMS**

a.     Defendants agree that all assets of the receivership estate and currently held by the Court-appointed receiver in the Action, Theodore Lanes ("Receiver"), are the property of Estate and shall be immediately distributed to Estate.

b.     Defendants shall stipulate ("Stipulation") to a non-dischargable judgment in the amount of $1,000,000, jointly and severally ("Judgment"). Estate may cause the Judgment to be entered at any time at Estate's discretion. Concurrently with the execution of this Agreement by the Parties, Defendants shall execute the Stipulation in favor of Estate for the total of $1,000,000, substantially in the form attached to this Agreement as Attachment "A". Defendants agree that the Judgment shall not be subject to discharge in any bankruptcy proceeding filed by Flores, Moore or any of their creditors.

c.     Following execution of this Agreement, Estate shall have the right to conduct discovery in the Action (or the Probate Action) until July 16, 2020 ("Discovery Period"). During the Discovery Period Estate shall conduct "Confirmatory





90

Discovery," pursuant to the terms of the California Civil Discovery Act, California Probate Code § 8870, or as otherwise provided under California law, including, but not limited to, assuring that the representations and warranties in Attachment "D" (as defined in Section 11, below), are materially accurate in all respects.

3. **RETENTION OF JURISDICTION**. The Parties agree that the Court presiding over the Action and the Probate Action shall retain jurisdiction to enforce the settlement terms hereof, under California *Code of Civil Procedure* Section 664.6, under any successor or similar statute, under any rule of court or otherwise. The Parties' shall execute a Stipulation and [Proposed] Order expressly providing that the Court shall reserve jurisdiction to enforce the terms of this Agreement substantially in the form attached to this Agreement as Attachment "B".

4. **RELEASES**. Defendants shall deliver to Estate a duly executed counterpart of (i) this Agreement and (ii) the General Release, in the form as attached to this Agreement as Attachment "C" ("Defendants' Release").

5. **NO USE OF SAWUSCH NAME OR LIKENESS**. Defendants shall not, in any way, use for any purpose Decedent's name or likeness or those of (a) any of Decedent's family members, including, but not limited to, Patsy Ann Sawusch and Carole Sawusch, or (b) any business or entity in which Decedent held an interest, including but not limited to the Estate Releasees (as that term is defined in Defendants' Release).

6. **CONTACT OR COMMUNICATION WITH ESTATE.** Any contact with Estate, Carole Sawusch, or Patsy Ann Sawusch, shall be made solely through Jeffrey S. Wruble, Esq. at Buchalter LLP (jwruble@buchalter.com). Defendants shall not, in any way, directly or indirectly, contact Carole Sawusch or Patsy Ann Sawusch, except through counsel.

7. **STIPULATION TO POST-JUDGMENT RECEIVER.** Defendants shall execute a stipulation to the appointment of a post-judgment receiver to aid in the enforcement of the Judgment. The form of the stipulation, including, but not limited to the identity of the receiver, shall be within Estate's sole discretion. Defendants shall provide Estate with an executed version of the stipulation, within seven (7) calendar days of Estate's transmission of the stipulation to Defendants.

8. **COMPLIANCE WITH COURT ORDERS.** Defendants shall fully comply with all of their obligations under the Order Appointing Receiver *Ex Parte*; Temporary Restraining Order; Order to Show Cause Why Receiver Should Not Be Confirmed *Pendente Lite* and Why Preliminary Injunction Should Not Be Granted, entered by the Court on November 9, 2018 (the "Appointment/TRO Order"), and the order confirming the Receiver's appointment and issuing a preliminary injunction under the same terms as the Temporary Restraining Order contained within the Appointment/TRO Order, entered by the Court on January 14, 2019.



BN 37042717v4

91

9.     **ADVICE OF COUNSEL**.  Each Party represents that it has been advised by the other Party to seek independent advice from their own attorneys and other advisors as to the meaning, effect, and advisability of this Agreement and all the terms of any part thereof, and has had the unrestricted opportunity to seek such independent advice prior to executing this Agreement.  Each Party also represents that it has been advised of the effect of this Agreement by its own attorneys, has investigated the facts and is not relying upon any representation or acknowledgment, whether oral or in writing, of any other Party except as contained herein.

10.     **NO RESCISSION RIGHTS**.  Except as expressly set forth herein, each of the Parties expressly waives any right to rescind all or any part of this Agreement.

11.     **REPRESENTATIONS**.     By no later than July 24, 2019, Defendants shall provide Estate with a written schedule of their assets as of the date of this Agreement. Defendants each represent and warrant that the matters described in Attachment "D" "Representations and Warranties of Flores and Moore" are true and accurate at the time of the execution of this Agreement. In the event that the Estate, the Receiver or their agents discover undisclosed assets with a total aggregate value at or in excess of $50,000 directly or indirectly belonging to, or held for the benefit of, Defendants, or either of them, Estate may, in its sole discretion, either (a) cancel the Settlement by the end of the Discovery Period and pursue any and all remedies or (b) file a declaration with the Court attesting to the amount by which the Judgment shall be increased to based upon the provisions of this section. Notwithstanding the foregoing, Defendants need not disclose any asset with a fair market value less than $5,000 as of the date of this Agreement. In the event that Defendants fail to provide Estate with the above-referenced written schedule of their assets by July 24, 2019, the Parties agree that for purposes of this Agreement the amount of Defendants' assets is not more than $100,000. Defendants acknowledge and agree that Estate is relying upon the representations set forth herein in entering into this Agreement.

12.     **DEFENDANTS' FINANCIAL ACCOUNT PASSWORDS.** Defendants shall not change the passwords or other information necessary to access any of their financial accounts until the Judgment is satisfied, except as required by any financial institution or for security purposes. If any passwords are changed in accordance with the foregoing, Defendants shall inform the Receiver and Jeffrey Wruble, Esq. of Buchalter LLP, within 24 hours. For any new financial accounts that Defendants may open in either of their names or the names of any businesses or entities in which either or both of Defendants have or will have an interest or control, Defendants shall provide Estate and the Receiver with the passwords or other information necessary to access any such accounts within 24 hours. The Parties agree that password information shall only be used in connection with this Agreement and the Action.

13.     **DEFENDANTS' E-MAIL ADDRESSES.** Nothing in this Agreement shall prohibit Defendants from changing their personal e-mail addresses or the passwords necessary to access their personal e-mail accounts.



BN 37042717v4

92

14. **SUCCESSORS AND THIRD PARTIES**. Each covenant set forth in this Agreement shall inure to the benefit of and be binding upon the Parties to this Agreement and their respective owners, heirs, successors, assigns, attorneys, agents, employees, representatives (past and present), parent corporations, subsidiary corporations, and each of them.

15. **RULES OF CONSTRUCTION AND EFFECT OF CAPTIONS**. As used in this Agreement, the masculine, feminine, and neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. The term "or" is not exclusive. Any form of the term "including" shall not be limiting and shall be construed to mean "including, without limitation." Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of text.

16. **TAX CONSEQUENCES**. Each Party represents that no other Party has made any representation regarding the tax consequences of the settlement set forth herein, and that each Party has consulted with its advisors regarding the tax consequences, if any, relating to said settlement.

17. **BINDING CONTRACT**. The terms of this Agreement are contractual and not merely recitals.

18. **COUNTERPARTS**. This Agreement and Attachment "B" may be signed in one or more counterparts, each of which shall be deemed an original. This Agreement shall be deemed fully executed and effective when all Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures. Facsimile, emailed, or electronic signatures shall be treated as original signatures in all respects.

19. **ATTORNEYS' FEES**. Except as set forth herein, each Party shall bear its own costs and attorneys' fees as part of the consideration for this Agreement. The prevailing Party in any action to enforce the terms hereof shall be entitled to recover reasonable attorneys' fees and costs as part of its damages. In the event that any action, suit, or other proceeding is instituted by any Party arising out of a breach of this Agreement, involving claims within the scope of the releases contained in this Agreement, or pertaining to a declaration of rights under this Agreement, the prevailing Party shall recover all of such Party's reasonable attorneys' fees and costs incurred in each and every such action, suit, or other proceedings, including any and all appeals, writs, or petitions therefrom.

20. **MODIFICATION ONLY IN WRITING**. This Agreement and any provision thereof, shall not be changed, waived, discharged or terminated, except by a subsequently executed instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

21. **ENTIRE UNDERSTANDING**. This Agreement contains the entire understanding of the Parties relating to the subject matter contained herein and

BN 37042717v4

93

supersedes all prior and collateral agreements, understandings, statements and negotiations of the Parties. Each Party acknowledges that no representations, inducements, promises or agreements, oral or written, with reference to the subject matter hereof have been made other than as expressly set forth herein, that there have been no prior or contemporaneous representations concerning the terms of this Agreement which differ from the terms hereof, and that no Party is relying upon any such representations or believes that any such representations were ever made.

22.     **NON-EXCLUSIVE REMEDIES**. In the event of a breach of any provision of this Agreement, the Parties, in addition to, and not in lieu of, the remedies expressly provided herein, shall be entitled to exercise such remedies that exist at law or in equity to enforce this Agreement, or any part thereof.

23.     **COVENANT NOT TO SUE**. But for actions related to enforcement of the Judgment, Estate covenants and agrees never to sue or otherwise commence or prosecute any action against any of the Defendants for claims covered by this Agreement.

24.     **NO WAIVER.** No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power or remedy which any Party may have, nor shall any such delay be construed to be a waiver of any such right, power, or remedy, or any acquiescence in any breach or default hereunder; nor shall any waiver of any breach or default of any Party hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to any Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of, any action begun to enforce any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which any Party would otherwise have. Any waiver, permit, consent or approval by any Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing signed by the Party to be charged and only as to that specific instance.

25.     **CONSTRUCTION**. This Agreement has been negotiated at arm's length between persons knowledgeable in the matters dealt with herein. In addition, each Party has been represented by experienced and knowledgeable legal counsel. Accordingly, the Parties agree that any rule of law, including California *Civil Code* Section 1654, or any other statutes, legal decisions, or common law principles of similar effect, that would require interpretation of any ambiguities in this Agreement, or any part thereof, against the Party that has drafted it, is of no application and is hereby expressly waived. The provisions of this Agreement shall be interpreted in a reasonable manner to affect the intentions of the Parties.

26.     **FURTHER ASSURANCES; COOPERATION**. The Parties agree to cooperate and to perform such acts and to prepare, execute and file any documents or stipulations reasonably required to give full force and effect to this Agreement. Defendants shall cooperate and perform such acts and execute any documents as reasonably requested by Estate in connection with the Action and the Probate Action.




6



94

27.    **TIME IS OF THE ESSENCE**.  As to all obligations hereunder, time is of the essence.

28.    **GOVERNING LAW**.  The Agreement shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed.  If any provision of the Agreement shall be determined to be invalid, void, or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

29.    **VENUE**.  Any action to enforce the terms hereof, or involving this Agreement, shall be filed in the Superior Court of the State of California, for the County of Los Angeles.

30.    **MEDIATOR'S ROLE SOLELY AS RESOLUTION FACILITATOR; NO FIDUCIARY DUTY OWED**.  The Parties specifically acknowledge that the mediator's involvement has been solely as a facilitator in an effort to assist the Parties in arriving at a mutually-agreeable resolution of their dispute.  The mediator is not engaged in the practice of law, does not represent any of the Parties, is not a fiduciary with respect to the mediation or any Party, owes no fiduciary duty to any Party, and has not provided any representations or legal advice of any kind including but not limited to the advisability of entering into this Agreement.  Each Party acknowledges and represents they have had legal counsel and/or other advisors assist in the mediation or, if not, have had a reasonable opportunity to engage his or her own legal counsel and/or other advisors, prior to entering into this Agreement.

31.    **DISPUTE RE TERMS; FURTHER MEDIATION**.  If there is any disagreement or dispute between or among the Parties hereto as to the form of any documentation to be drafted and/or executed pursuant to this Agreement, the Parties appoint Hon. James A. Steele of Signature Resolution, LLC to resolve all such issues as arbitrator and his decision shall be final and binding upon the Parties. Any arbitration award rendered hereunder may be entered as a judgment in any court of competent jurisdiction and all Parties waive right to appeal.  In consideration of the Parties' mutual intent to ensure any settlement is expeditiously and finally resolved, all Parties waive any right to object to Judge Steele so serving as arbitrator.  In the event of any dispute to be decided by Judge Steele, the Party raising the dispute shall provide notice to all other Parties regarding the dispute and the Parties shall first meet and confer to resolve the dispute.  If no resolution is reached after five (5) business days, the Party raising the dispute shall notify Judge Steele (JudgeSteele@SignatureResolution.com) of the dispute, with a copy of said notice provided simultaneously to all other Parties.  After notice of the dispute is provided to Judge Steele, all Parties shall have five (5) days to provide Judge Steele with any arguments supporting their positions.  No hearing shall be required unless deemed necessary by Judge Steele.  If there is any disagreement or dispute between or among the Parties hereto with regard to the meaning or interpretation of any provision hereof, or any obligation arising hereunder, the Parties agree to a further mediation session before the same mediator as a condition precedent to any court action relating hereto.  The Parties shall comply with all applicable



7

95



Signature Resolution LLC's policies regarding same including with respect to deposits and payment of fees. Excepted from any such mediation requirement shall be any request for injunctive or similar extraordinary relief based upon exigent circumstances.

32.    **WAIVER OF JURY TRIAL**. IN THE EVENT OF A DISPUTE REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS AGREEMENT OR ANY PART OF IT, THE ACTION, THE PROBATE ACTION, THE CREDITORS CLAIMS, OR ANY RESPECTIVE CLAIMS IN ANY OF SAID ACTIONS, EACH PARTY, AFTER CONSULTING WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY, TO THE EXTENT PERMITTED BY LAW.

[*Signatures Follow*]



96

**IN WITNESS WHEREOF**, the Parties have executed this Agreement effective on the day and year set forth above.

ESTATE OF MARK SAWUSCH

By: _____

CAROLE SAWUSCH
Title: ADMINISTRATOR

_____

PATSY ANN SAWUSCH
Individually

_____

ANTHONY DAVID FLORES
Individually

_____

ANNA MOORE
Individually

BN 37042717v4

97

**Attachment A to Settlement Agreement and Release**

**Stipulation for Entry of Judgment**

BN 37042717v4

1   BUCHALTER
    A Professional Corporation
2   MARK T. CRAMER (SBN: 198952)
    JEFFREY S. WRUBLE (SBN: 94734)
3   DAVID E. MARK (SBN: 247283)
    1000 Wilshire Boulevard, Suite 1500
4   Los Angeles, CA 90017-1730
    Telephone: (213) 891-0700
5   Fax: (213) 896-0400
    E-mail: mcramer@buchalter.com
6
    Attorneys for Plaintiff PATSY ANN SAWUSCH,
7   beneficiary of the Estate of Mark Sawusch

8   SHEPPARD MULLIN RICHTER & HAMPTON
    ADAM F. STREISAND (SBN: 155662)
9   GOLNAZ YAZDCHI (SBN: 279160)
    J.D. REES (SBN: 301687)
10  1901 Avenue of the Stars, Suite 1600
    Los Angeles, California 90067
11  Telephone: (310) 228-3700
    Fax: (310) 228-3701
12  E-mail: astreisand@sheppardmullin.com

13  Attorneys for Plaintiff CAROLE SAWUSCH,
    Administrator of the Estate of Mark Sawusch
14

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16          COUNTY OF LOS ANGELES – WEST JUDICIAL DISTRICT

17  CAROLE SAWUSCH, Administrator of the          CASE NO. 18SMCV00134
    Estate of Mark Sawusch, and PATSY ANN         Assigned to Honorable Elaine Mandel
18  SAWUSCH, beneficiary of the Estate of Mark    Department P
    Sawusch
19                                                STIPULATION FOR ENTRY OF
            Plaintiffs,                           JUDGMENT
20
            vs.
21
    ANTHONY DAVID FLORES a.k.a., ANTON
22  DAVID, individually and as purported Attorney-
    in-Fact for Decedent, Mark Sawusch; ANNA
23  MOORE, an individual; and DOES 1-110,
    inclusive,
24
            Defendants.
25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES



                    STIPULATION FOR ENTRY OF JUDGMENT

                                                                        99

1    **IT IS HEREBY STIPULATED** between Plaintiffs Carole Sawusch, Administrator of the

2 Estate of Mark Sawusch, and Patsy Ann Sawusch, beneficiary of the Estate of Mark Sawusch

3 ("Plaintiffs"), on the one hand, and Defendants Anthony David Flores a.k.a., Anton David, and

4 a.k.a. Anton David Flores, individually and as purported Attorney-in-Fact for Decedent, Mark

5 Sawusch, and Anna Moore ("Defendants"), on the other hand, through their respective attorneys of

6 record, that judgment be immediately entered by the Court in favor of Plaintiffs and against

7 Defendants, jointly and severally, as set forth herein. Plaintiffs and Defendants are sometimes

8 hereinafter collectively referred to as the "Parties," and individually as a "Party." This Stipulation

9 for Entry of Judgment (the "Stipulation") is dated for reference purposes as of July 17, 2019.

10    **RECITALS**

11    A.    On October 30, 2018, Plaintiffs filed their Complaint in the above captioned action

12 against Defendants alleging causes of action for (1) Order Invalidating Purported Gifts to

13 Caretakers Based on Lack of Capacity, Undue Influence, and Fraud, and For an Order Conveying

14 Such Assets to the Estate; (2) Financial Elder Abuse; (3) Conversion; (4) Unjust Enrichment; (5)

15 Accounting by Attorney-in-Fact; (6) Breach of Contract; (7) Recovery of Personal Property; (8)

16 Breach of Fiduciary Duty; (9) Breach of the Implied Covenant of Good Faith and Fair Dealing;

17 (10) Declaratory Relief; and (11) Cancellation of Instrument.

18    B.    Defendants denied certain allegations of the complaint and raised certain affirmative

19 defenses.

20    C.    On July 17, 2019, the Parties mediated their dispute before the Hon. James Steele

21 (Ret.), and reached the resolution set forth in that certain Settlement Agreement and Release, dated

22 July 17, 2019 (the "Settlement Agreement") and this Stipulation in which Defendants agree to entry

23 of judgment in favor of Plaintiffs, and each of them, and against Defendants, and each of them,

24 jointly and severally, in the amount of $1,000,000.00 (the "Judgment Amount"), on the terms set

25 forth below. Judgment in the Judgment Amount shall be immediately entered by the Court as set

26 forth in this Stipulation.

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1

## STIPULATION

**NOW, THEREFORE**, Plaintiffs and Defendants mutually agree that:

1. Defendants knowingly, intelligently and voluntarily agree that a judgment in the Judgment Amount be entered immediately by the Court as set forth herein.

2. Plaintiffs and Defendants hereby stipulate that immediately, Plaintiffs may apply *ex parte* to have a judgment entered pursuant to the terms of this Stipulation, without further notice to Defendants (or right thereof), against Defendants for the Judgment Amount ("Judgment").

3. Judgment hereon shall be entered upon the submission of this Stipulation.

4. Defendants knowingly, intelligently and voluntarily waive any right they may have to oppose or object to the issuance of the Judgment as called for in this Stipulation, and agree that they will neither oppose nor object to the issuance of the Judgment. Defendants also waive any rights they may have to object to the issuance of any Abstracts of Judgment, Writs of Execution or any other action to be taken by Plaintiffs to enforce the Judgment, and Defendants agree that they will neither oppose nor object to the issuance of any Abstracts of Judgment, Writs of Execution or any other action to be taken by Plaintiffs to enforce said Judgment.

5. Defendants have consulted with legal counsel of their own choosing concerning their rights with respect to the execution of this Stipulation and the issuance of the Judgment.

6. Plaintiffs shall be entitled to recover all reasonable attorneys' fees and costs incurred in enforcing and collecting the Judgment, once entered, as well as all amounts permitted by California law in connection with the enforcement of a judgment or otherwise available by law, including, without limitation, all amounts provided for in California *Code of Civil Procedure*, Section 1033.5(a)(10)(A) and the *Enforcement of Judgments Act*, Title 9 of the California *Code of Civil Procedure*, Sections 680.010 through 724.260.

7. The Judgment entered pursuant hereto shall, upon entry, be final for all purposes. Defendants knowingly, intelligently and voluntarily enter into this Stipulation and waive any right to (i) seek a new trial, (ii) appeal the entry of the Judgment, (iii) seek any other review of the Judgment entered pursuant to this Stipulation, or, (iv) assert any other rights and remedies that they may now or at any time hereafter have to attack the Judgment entered pursuant to this Stipulation.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

2

**STIPULATION FOR ENTRY OF JUDGMENT**

8.    This Stipulation is and shall be binding upon the Parties, and their respective officers, directors, shareholders, owners, members, managers, managing members, heirs, executors, administrators, assigns and successors in interest.

9.    This Stipulation, together with the Settlement Agreement (and its attachments), contains the entire understanding of the Parties relating to the subject matter contained herein and therein, and supersedes all prior and collateral agreements, understandings, statements and negotiations of the Parties. The Parties each acknowledge that no representations, inducements, promises or agreements, oral or written, with reference to the subject matter herein have been made other than as expressly set forth herein, or in the Settlement Agreement (including its attachments).

10.    If any provision of this Stipulation shall be determined to be invalid, void or illegal, such provision shall be construed and amended in a manner which would permit its enforcement, but in no event shall such provision affect, impair, or invalidate any other provision hereof.

11.    Defendants hereby irrevocably waive all time limit provisions of the California *Code of Civil Procedure*, including without limitation, Sections 583.410 and 583.420, and under any statute, rule or regulation that affects their rights thereunder. Defendants further agree that the provisions of California *Code of Civil Procedure*, Section 583.110, *et seq*., relating to dismissal for delay in prosecution, and all statutes, laws or rules of similar import, shall be irrevocably waived and that this action need not be brought to trial within any period specified in the California *Code of Civil Procedure*, any California Rule of Court, or elsewhere. In particular, and not by way of limitation, Defendants waive any requirement that this case be brought to trial within five years from the date of its filing pursuant to California *Code of Civil Procedure*, Section 583.310.

12.    Any of the matters provided for in this Stipulation may be performed by a judge, temporary judge, judge pro tem, court commissioner who may act as a temporary judge, or by a clerk of the court.

13.    As used herein the masculine, feminine, or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. The word "or" is not exclusive. The word "include" in any form shall not be limiting, and shall be construed as "including, without limitation."



14. This Stipulation may be signed in one or more counterparts, each of which shall be deemed an original. This Stipulation shall be deemed fully executed and effective when all the Parties have executed at least one of the counterparts, even though no single counterpart bears all such signatures.

15. This Stipulation may be executed by photocopied, electronic or facsimile signatures, which signatures shall have the same force and effect as original signatures.

16. This Stipulation cannot be modified except in writing subscribed by all Parties.

**IT IS SO STIPULATED.**

**IN WITNESS WHEREOF**, the Parties have executed this Stipulation for Entry of Judgment effective on the day and year set forth above.

PATSY ANN SAWUSCH

CAROLE SAWUSCH, Administrator of the Estate of Mark Sawusch

ANTHONY DAVID FLORES a.k.a.,
ANTON DAVID, aka ANTON DAVID
FLORES

ANNA MOORE



BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

4

**STIPULATION FOR ENTRY OF JUDGMENT**

**Attachment B to Settlement Agreement and Release**

**Stipulation for Continuing Jurisdiction of the Court**



1  BUCHALTER
   A Professional Corporation
2  MARK T. CRAMER (SBN: 198952)
   JEFFREY S. WRUBLE (SBN: 94734)
3  DAVID E. MARK (SBN: 247283)
   1000 Wilshire Boulevard, Suite 1500
4  Los Angeles, CA  90017-1730
   Telephone: (213) 891-0700
5  Fax: (213) 896-0400
   E-mail: mcramer@buchalter.com
6
   Attorneys for Plaintiff PATSY ANN SAWUSCH,
7  beneficiary of the Estate of Mark Sawusch

8  SHEPPARD MULLIN RICHTER & HAMPTON
   ADAM F. STREISAND (SBN: 155662)
9  GOLNAZ YAZDCHI (SBN: 279160)
   J.D. REES (SBN: 301687)
10 1901 Avenue of the Stars, Suite 1600
   Los Angeles, California  90067
11 Telephone: (310) 228-3700
   Fax: (310) 228-3701
12 E-mail: astreisand@sheppardmullin.com

13 Attorneys for Plaintiff CAROLE SAWUSCH,
   Administrator of the Estate of Mark Sawusch
14

15                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

16               COUNTY OF LOS ANGELES – WEST JUDICIAL DISTRICT

17

18

19  CAROLE SAWUSCH, Administrator of          CASE NO. 18SMCV00134
    the Estate of Mark Sawusch, and
20  PATSY ANN SAWUSCH, beneficiary           Assigned to Honorable Elaine Mandel
    of the Estate of Mark Sawusch            Department P

21              Plaintiffs,                  **STIPULATION TO CONDITIONALLY
                                             DISMISS ENTIRE ACTION**
22        vs.
                                             **Date:  N/A**
23  ANTHONY DAVID FLORES a.k.a.,             **Time:  N/A**
    ANTON DAVID, individually and as         **Dept:  P**
24  purported Attorney-in-Fact for
    Decedent, Mark Sawusch; ANNA
25  MOORE, an individual; and DOES 1-        **Trial Date: N/A**
    110, inclusive,
26
                Defendants.
27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

1
**STIPULATION TO CONDITIONALLY DISMISS ENTIRE ACTION**



1  **TO THE HONORABLE ELAINE MANDEL, JUDGE OF THE SUPERIOR**

2  **COURT:**

3     Plaintiffs Carole Sawusch, Administrator of the Estate of Mark Sawusch, and

4  Patsy Ann Sawusch, beneficiary of the Estate of Mark Sawusch ("Plaintiffs"), on the one

5  hand, and Defendants Anthony David Flores a.k.a., Anton David, a.k.a Anton David

6  Flores, individually and as purported Attorney-in-Fact for Decedent, Mark Sawusch, and

7  Anna Moore ("Defendants," and with Plaintiffs, collectively, the "Parties"), on the other

8  hand, agree as follows. Capitalized terms not otherwise defined herein shall have the

9  meaning provided in the Parties' Settlement Agreement and Releases dated July 17,

10  2019.

11                            **RECITALS**

12     1.    WHEREAS, the parties have entered into a conditional settlement which is

13  to be completed within one year; and

14

15     2.    WHEREAS, in the event that the Court requires that the above-captioned

    matter be dismissed, the parties agree that the above-captioned matter should be

16
    conditionally dismissed without prejudice, with the Court reserving its power and

17
    jurisdiction to set aside the conditional dismissal and to enforce the terms of the

18
    settlement of the parties upon the *ex parte* showing of a default pursuant to the terms

19
    thereof pursuant to California *Code of Civil Procedure* § 664.6.

20

21

22

23

24

25

26

27

28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES





                        2

**STIPULATION TO CONDITIONALLY DISMISS ENTIRE ACTION**

## STIPULATION

THEREFORE, the Parties stipulate:

That in the event that the Court requires that the above-captioned matter be dismissed, the parties agree that the above-captioned matter should be conditionally dismissed without prejudice, with the Court reserving its power and jurisdiction to set aside the conditional dismissal and to enforce the terms of the settlement of the parties upon the *ex parte* showing of a default pursuant to the terms thereof pursuant to California *Code of Civil Procedure* § 664.6.

Dated for reference purposes as of July 17, 2019.

CAROLE SAWUSCH,
Administrator of the Estate of Mark Sawusch

*Carole Sawusch*

PATSY ANN SAWUSCH,
beneficiary of the Estate of Mark Sawusch

*Patsy Ann Sawusch*

**Approved as to form:**

BUCHALTER
A Professional Corporation

By: _____
    MARK T. CRAMER
    JEFFREY S. WRUBLE
    DAVID E. MARK
Attorneys for Plaintiff PATSY ANN SAWUSCH
Beneficiary of the Estate of Mark Sawusch

[Signatures continue on the following page.]



BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

3

**STIPULATION TO CONDITIONALLY DISMISS ENTIRE ACTION**

SHEPPARD MULLIN RICHTER & HAMPTON

By: _____
ADAM F. STREISAND
GOLNAZ YAZDCHI
J.D. REES
Attorneys for Plaintiff CAROLE SAWUSCH
Administrator of the Estate of Mark Sawusch

ANTHONY DAVID FLORES a.k.a., ANTON DAVID a.k.a. ANTON DAVID FLORES, individually

ANNA MOORE

Approved as to form:

LAW OFFICE OF NEAL S. ZASLAVSKY

By: _____
NEAL S. ZASLAVSKY
KAREN I. SHANBROM
Attorneys for Defendants ANTHONY DAVID FLORES a.k.a., ANTON DAVID, a.k.a. ANTON DAVID FLORES and ANNA MOORE



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

4

**STIPULATION TO CONDITIONALLY DISMISS ENTIRE ACTION**

**Attachment C to Settlement Agreement and Release**

**Defendants' Release**

BN 37042717v4

## GENERAL RELEASE

This General Release (the "Release") is entered into by Anthony David Flores ("Flores") and Anna R. Moore ("Moore" and collectively with Flores, "Defendants"), in favor of the Estate of Mark Sawusch ("Estate"), Carole Sawusch, individually and as Administrator of Estate, Patsy Anne Sawusch ("Patsy"), Trust, LLC, The Mark R. Sawusch Family Savings Trust Dated January 26, 2007, and Executed on February 15, 2007, PCH Investors I, LLC, Mark R. Sawusch, M.D., Inc., Malibu View Partners, LLC, PG Management, LLC, Paradise Gardens, LP, Palisades Partners, LP, Serra Professional Building LLC (Collectively,"Estate Releasees") and is effective as of the 17th day of July, 2019.[1]

In consideration of the covenants contained herein, and in the Settlement Agreement ("Agreement") to which this Release is appended, Defendants agree as follows:

1.    **RELEASES**. Defendants, and their representatives, agents, attorneys, successors and assigns, and each of them (collectively, "Releasors"), hereby release Estate Releasees, their representatives, owners, officers, directors, employees, shareholders, agents, parent corporations, subsidiary corporations, attorneys, successors and assigns, and each of them (collectively, "Releasees"), from any and all claims, losses, damages and causes of action, whether known or unknown, of whatever nature, arising prior to the date hereof.

2.    **WAIVER OF SECTION 1542**. Defendants acknowledge and agree that this Release applies to all claims for damages or losses to each Releasors' property or person (whether these damages or losses are known or unknown, foreseen or unforeseen, or patent or latent) which each Releasor may have against the respective Releasee(s) arising out of the matters released, and Defendants waive application of California Civil Code Section 1542.

Defendants certify that both Flores and Moore have read the following provisions of California Civil Code Section 1542:

"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

and indicates that fact by signing its or his initials here          (Flores) and          (Moore).

Defendants understand and acknowledge that the significance and consequence of this waiver of California Civil Code Section 1542 is that even if Releasors should eventually suffer additional damages arising out of the facts referred to in the Agreement to which this is appended or this Release, they will not be able to make any

---



[1] Except as otherwise defined herein, capitalized terms used herein are used with the same meaning as in the Settlement Agreement and Release to which this Release is appended.

claim for those damages. Furthermore, Defendants acknowledge that they intend these consequences even as to claims for damages that may exist as of the date of this release but which Defendants do not know exists, and which, if known, would materially affect their decision to execute this Release and Agreement, regardless of whether their lack of knowledge is the result of ignorance, oversight, error, negligence, or any other cause.

3.    **COVENANT NOT TO SUE**.  Defendants covenant and agree never to sue or otherwise commence or prosecute any action or other proceeding against any of the Releasees for a claim released pursuant to this Release. Defendants agree that this paragraph 3 (the "Covenant Not to Sue") may be pleaded by any of the Releasees as a full and complete defense to any action or proceeding by Defendants that is contrary to the terms of the Release, and may be asserted as a basis for abatement of, or injunction against, said action or proceeding and as a basis for a cross-complaint for damages therein.

4.    **REPRESENTATIONS**.  Defendants represent that they are the owners of the claims herein released and that they have not assigned to any person or entity any claims against any Releasee whom they are releasing herein.

5.    **GOVERNING LAW**.  This Release shall be construed in accordance with and governed by the internal laws, other than choice of laws, of the State of California, regardless of where executed or performed.

6.    **GOVERNED BY SETTLEMENT AGREEMENT**.  This Release is governed by the terms of that certain Settlement Agreement to which it is an Attachment, all of which terms are hereby incorporated herein.

IN WITNESS WHEREOF, Defendants have executed this Release effective on the day and year set forth above.

ANTHONY DAVID FLORES
Individually

ANNA R. MOORE
Individually

BN 37042717v4

111

## ATTACHMENT D TO SETTLEMENT AGREEMENT AND RELEASE

## REPRESENTATIONS OF FLORES AND MOORE



BN 37042717v4

# SCHEDULE OF ASSETS



Shawn S. Kerendian, SBN 251655
    shawn@keystone-law.com
KEYSTONE LAW GROUP, P.C.
11300 W. Olympic Blvd., Suite 910
Los Angeles, California 90064
Tel:    310.444.9060
Fax:    310.444.9092

Attorneys for
CAROLE SAWUSCH,
Administrator of the Estate of Mark Sawusch

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

In re the Matter of the: | Case No. 18STPB05726
---|---
THE ESTATE OF MARK SAWUSCH | **NOTICE OF WITHDRAWAL OF ALL CREDITORS' CLAIMS**

Anthony David Flores and Anna Rene Moore hereby withdraw with prejudice any and all creditors' claims that they filed in the above-captioned action, including but not limited to the four (4) claims filed on January 16, 2019.

Dated: July 17, 2019

Anthony David Flores
Print Name of Signatory

Signature

Dated: July 17, 2019

Anna Rene Moore
Print Name of Signatory

Signature

**APPROVED AS TO FORM**

Dated: July 17, 2019

Neal S. Zaslavsky, Esq.
Print Name of Signatory

Signature

Case No. 18STPB05726                          1
NOTICE OF WITHDRAWAL OF ALL CREDITORS' CLAIMS

EXHIBIT "E"

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
        A Limited Liability Partnership
2      Including Professional Corporations
   ADAM F. STREISAND, Cal. Bar No. 155662
3  GOLNAZ YAZDCHI, Cal. Bar No. 279160
   J.D. REES, Cal. Bar No. 301687
4  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
5  Telephone:    310.228.3700
   Facsimile:    310.228.3701
6  E mail        astreisand@sheppardmullin.com
                 gyazdchi@sheppardmullin.com
7                jrees@sheppardmullin.com

8  Attorneys for Plaintiff CAROLE SAWUSCH,
   Administrator of the Estate of Mark Sawusch
9
   JOHN J. BARCAL, INC.
10 JOHN J. BARCAL, Cal. Bar No. 43213
   HOWARD K. HEIMS (*Pro Hac Vice*)
11 1301 East Road
   La Habra Heights, California 90631
12 Telephone:  (562) 694-3397
   E-mail: Jbarcal@marshall.usc.edu
13
   Attorneys for Plaintiff PATSY SAWUSCH,
14 Sole Beneficiary of Estate of Mark Sawusch

15             SUPERIOR COURT OF THE STATE OF CALIFORNIA

16             COUNTY OF LOS ANGELES, WEST DISTRICT

17

18 CAROLE SAWUSCH, administrator of        Case No. 18SMCV00134
   the Estate of Mark Sawusch, and PATSY
19 ANN SAWUSCH, beneficiary of the         Assigned for all purposes to
   Estate of Mark Sawusch                  the Honorable Elaine Mandel
20
                Plaintiffs,                 [~~PROPOSED~~] JUDGMENT
21
          v.
22
   ANTHONY DAVID FLORES a.k.a.,
23 ANTON DAVID, individually and as
   purported Attorney-in-Fact for Decedent,
24 Mark Sawusch; ANNA MOORE, an
   individual; and DOES 1-110, inclusive,
25
                Defendants.
26

27

28

Electronically Received 06/25/2020 09:11 AM

FILED
Superior Court of California
County of Los Angeles
07/06/2020
Sherri R. Carter, Executive Officer / Clerk of Court
By: _____ L. Pastel _____ Deputy

SMRH:4831-5808-8888.4                                    116    JUDGMENT

# JUDGMENT

WHEREAS, plaintiffs Carole Sawusch and Patsy Ann Sawusch ("**Plaintiffs**") and defendants Anthony David Flores and Anna Rene Moore ("**Defendants**") entered into a Settlement Agreement And Release dated July 17, 2019 ("**Settlement Agreement**") and a Stipulation For Entry Of Judgment dated July 17, 2019 ("**Stipulation**")—both of which are expressly incorporated herein by reference—under California Code of Civil Procedure section 664.6; and

WHEREAS, the Court has reviewed the Settlement Agreement and the Stipulation and finds good cause exists to grant judgment in favor of Plaintiffs and against Defendants.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

JUDGMENT is hereby entered for Plaintiffs and against defendants as follows:

1. Plaintiffs shall recover from Defendants, jointly and severally, and Plaintiffs hereby have a money judgment against Defendants, jointly and severally, in the amount of one million dollars ($1,000,000.00).

2. Defendants waive any rights they may have to oppose or object to the issuance of this Judgment and agree that they will neither oppose nor object to the issuance of the Judgment.

3. Defendants waive any rights they may have to object to the issuance of any Abstracts of Judgment, Writs of Execution or any other action to be taken by Plaintiffs to enforce the Judgment.

4. Plaintiffs shall be entitled to recover from Defendants all reasonable attorneys' fees and costs incurred in enforcing and collecting this Judgment, once entered, as well as all amounts permitted by California law in connection with the enforcement of a judgment otherwise available by law, including, without limitation, all amounts provided for in California Code of Civil Procedure ("**CCP**") section 1033.5(a)(10)(A) and the

1  *Enforcement of Judgments Act*, Title 9 of the California CCP, Sections 680.010 through

2  724.260.

3

4              **IT IS SO ORDERED, ADJUDGED, AND DECREED.**

5

6  Date: _____, 2020    _____

7                                          JUDGE OF THE SUPERIOR COURT
                                           Elaine W. Mandel / Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PROOF OF SERVICE</u>

**Carole Sawusch, et al. v. Anthony David Flores, et al.**
**Case No.: 18SMCV00134**

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-6055.

On June 25, 2020, I served true copies of the following document(s) described as **[PROPOSED] JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lthompson@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 25, 2020, at Los Angeles, California.

Lynne Thompson

**SERVICE LIST**

| | |
|---|---|
| Anthony David Flores | *Defendants in Pro Per,* |
| 1612 Fulton Street, #103 | Anthony David Flores, Anna Moore |
| Fresno, CA  93721 | |
| Tel: (310) 774-6441 | |
| Email: info@3rdstarcreative.com | |

Anna Moore
1612 Fulton Street, #103
Fresno, CA  93721
Tel: (310) 774-6441
Email: info@3rdstarcreative.com

| | |
|---|---|
| John J. Barcal, Esq. | *Attorneys for Plaintiff,* |
| John J. Barcal, Inc. | Patsy Ann Sawusch, |
| 1301 East Road | Beneficiary of the Estate of Mark Sawusch |
| La Habra Hts, CA  90631 | |
| Tel: (562) 694-3397 | |
| Fax: (562) 697-9724 | |
| E-mail: jjbinc2020@gmail.com | |

| | |
|---|---|
| Theodore  Lanes | *Court-Appointed Receiver* |
| 655 Deep Valley Drive, Suite 125M | |
| Rolling  Hills  Estate, CA 90274 | |
| Tel: (310) 766-1415 | |
| Fax: (310) 693-9494 | |
| E-mail: tl@lanesmgmt.com | |

# EXHIBIT F

Electronically Received 09/30/2020 02:43 PM

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   ADAM F. STREISAND, Cal. Bar No. 155662
3  GOLNAZ YAZDCHI, Cal. Bar No. 279160
   J.D. REES, Cal. Bar No. 301687
4  1901 Avenue of the Stars, Suite 1600
   Los Angeles, California 90067-6055
5  Telephone:    310.228.3700
   Facsimile:    310.228.3701
6  E mail        astreisand@sheppardmullin.com
                 gyazdchi@sheppardmullin.com
7                jrees@sheppardmullin.com

8  Attorneys for Plaintiff CAROLE SAWUSCH,
   Administrator of the Estate of Mark Sawusch
9
   JOHN J. BARCAL, INC.
10 JOHN J. BARCAL, Cal. Bar No. 43213
   HOWARD K. HEIMS (*Pro Hac Vice*)
11 1301 East Road
   La Habra Heights, California 90631
12 Telephone:  (562) 694-3397
   E-mail: Jbarcal@marshall.usc.edu
13
   Attorneys for Plaintiff PATSY SAWUSCH,
14 Sole Beneficiary of Estate of Mark Sawusch

15           SUPERIOR COURT OF THE STATE OF CALIFORNIA

16             COUNTY OF LOS ANGELES, WEST DISTRICT

17

| | |
|---|---|
| 18  CAROLE SAWUSCH, administrator of the Estate of Mark Sawusch, and PATSY 19  ANN SAWUSCH, beneficiary of the Estate of Mark Sawusch 20 | Case No. 18SMCV00134 <br><br> Assigned for all purposes to the Honorable Elaine Mandel |
| Plaintiffs, 21 | **[PROPOSED]** **AMENDED JUDGMENT** |
| v. 22 | Assigned for All Purposes to the Honorable Elaine Mandel |
| 23  ANTHONY DAVID FLORES a.k.a., ANTON DAVID, individually and as purported Attorney-in-Fact for Decedent, 24  Mark Sawusch; ANNA MOORE, an individual; and DOES 1-110, inclusive, 25 | |
| Defendants. 26 | |

27

28

FILED
Superior Court of California
County of Los Angeles
10/01/2020
Sherri R. Carter, Executive Officer / Clerk of Court
By: _____ L. Pastel _____ Deputy

## AMENDED JUDGMENT

WHEREAS, plaintiffs Carole Sawusch and Patsy Ann Sawusch ("**Plaintiffs**") and defendants Anthony David Flores and Anna Rene Moore ("**Defendants**") stipulated to the entry of a judgment in this action, *Sawusch v. Flores et al.*, L.A.S.C. Case Number 18SMCV00134 (the "**Judgment**"), which Judgment was entered by the Court on July 6, 2020; and

WHEREAS, on September 18, 2020, the Plaintiffs and Defendants filed a Joint Stipulation And [Proposed] Order Re Additional Judgment Debtors (the "**Stipulation**"), which stipulates to the naming as additional judgment debtors under the Judgment certain entities that are Defendants' alter egos, i.e., 3rd Star Creative, Anton David, Inc., Fulton Yoga Collective, and Central Valley Window Cleaning, Inc. (collectively, "**Defendant Entities**"), which Defendant Entities were virtually represented in these proceedings.

WHEREAS, the Court has reviewed the Stipulation and finds good cause exists to enter the amended judgment as prayed.

## IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:

This AMENDED JUDGMENT is hereby entered for Plaintiffs and against Defendants and Defendant Entities as follows:

1.     Plaintiffs shall recover from Defendants and Defendant Entities, jointly and severally, and Plaintiffs hereby have a money judgment against Defendants and Defendant Entities, jointly and severally, in the amount of one million dollars ($1,000,000.00).

2.     Defendants and Defendant Entities waive any rights they may have to oppose or object to the issuance of this Judgment and agree that they will neither oppose nor object to the issuance of the Judgment.

3.     Defendants and Defendant Entities waive any rights they may have to object to the issuance of any Abstracts of Judgment, Writs of Execution or any other action to be taken by Plaintiffs to enforce the Judgment.

4.     Plaintiffs shall be entitled to recover from Defendants and Defendant Entities all reasonable attorneys' fees and costs incurred in enforcing and collecting this Judgment, once entered, as well as all amounts permitted by California law in connection with the enforcement of a judgment otherwise available by law, including, without limitation, all amounts provided for in California Code of Civil Procedure ("**CCP**") section 1033.5(a)(10)(A) and the *Enforcement of Judgments Act*, Title 9 of the California CCP, Sections 680.010 through 724.260.

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

Date: 10/01/2020 _____, 2020    JUDGE OF THE SUPERIOR COURT
Elaine W. Mandel / Judge

SMRH:4825-0150-6249.1                    AMENDED JUDGMENT    124

<u>PROOF OF SERVICE</u>

**Carole Sawusch, et al. v. Anthony David Flores, et al.**
**Case No.: 18SMCV00134**

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 1901 Avenue of the Stars, Suite 1600, Los Angeles, CA 90067-6055.

On September 30, 2020, I served true copies of the following document(s) described as **[PROPOSED] AMENDED JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lthompson@sheppardmullin.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 30, 2020, at Los Angeles, California.

_____
Lynne Thompson

**SERVICE LIST**

| | |
|---|---|
| Anthony David Flores<br>1612 Fulton Street, #103<br>Fresno, CA 93721<br>Tel: (310) 774-6441<br>Email: info@3rdstarcreative.com | *Defendants in Pro Per* Individually and on behalf of Defendants Central Valley Window Cleaning, Inc., 3rd Star Creative, Anton David Inc., and Fulton Yoga |
| Anna Moore<br>1612 Fulton Street, #103<br>Fresno, CA 93721<br>Tel: (310) 774-6441<br>Email: info@3rdstarcreative.com | |
| John J. Barcal, Esq.<br>John J. Barcal, Inc.<br>1301 East Road<br>La Habra Hts, CA 90631<br>Tel: (562) 694-3397<br>Fax: (562) 697-9724<br>E-mail: jjbinc2020@gmail.com | *Attorneys for Plaintiff,*<br>Patsy Ann Sawusch,<br>Beneficiary of the Estate of Mark Sawusch |
| Theodore Lanes<br>655 Deep Valley Drive, Suite 125M<br>Rolling Hills Estate, CA 90274<br>Tel: (310) 766-1415<br>Fax: (310) 693-9494<br>E-mail: tl@lanesmgmt.com | *Court-Appointed Receiver* |